**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**CASE NO. 1:20-cv-22667-RNS**

FONTAINEBLEAU FLORIDA HOTEL, LLC,

Plaintiff,

v.

THE SOUTH FLORIDA HOTEL AND CULINARY EMPLOYEES
WELFARE FUND
and
UNITE HERE, LOCAL 355,

Defendants.

UNITE HERE, LOCAL 355,
and
WENDI WALSH, *et al.*,
as Trustees of the
THE SOUTH FLORIDA HOTEL AND CULINARY EMPLOYEES
WELFARE FUND,

Counter Plaintiffs,

v.

FONTAINEBLEAU FLORIDA HOTEL, LLC,

Counter Defendant.

## NOTICE OF FILING AND ERRATA

On August 3, 2020 undersigned counsel filed an Answer/Affirmative Defenses and

Counter Claim (D.E. #17) on behalf of the Union UNITE HERE Local 355.  Regretfully, the

Collective Bargaining Agreement was inadvertently omitted.  Undersigned counsel requests that

the attached EXHIBIT A be added to the docket as D.E. #17-1.  .

Dated August 10, 2020          Respectfully submitted,

_____

**D. Marcus Braswell, Jr. (146160)**
mbraswell@sugarmansusskind.com
**SUGARMAN & SUSSKIND, P.A.**
100 Miracle Mile, Suite 300
Coral Gables, FL  33134
Tel. (305) 529-2801
Fax. (305) 447-8115

**Attorneys for Defendant Fund and Counter Plaintiffs Trustees**
**Local Counsel for Union, Local 355**

## CERTIFICATE OF SERVICE

I certify that on August 10, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all parties and/or counsel of record identified on the below Service List, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: ____/s/ D. Marcus Braswell, Jr._____
     D. MARCUS BRASWELL, JR.

## SERVICE LIST

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Russell S. Buhite, FL 0831085
Russell.Buhite@ogletree.com
1201 Third Avenue, Suite 5150
Seattle, WA 98101
Telephone: 206-693-7057 & Fax: 206-693-7058

S. Kathleen Massing, FL 0722219
Kathleen.Massing@ogletree.com
100 North Tampa Street, Suite 3600
Tampa, FL 33602
Telephone: 813-289-1247 & Fax: 813-289-6530

**Attorneys for Plaintiff/Counter Defendant**
**FONTAINEBLEAU HOTEL FLORIDA, LLC**

# Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

## Between

## Fontainebleau Florida Hotel, LLC
## (d/b/a Fontainebleau Miami Beach)

## and

## UNITE HERE, Local 355

## July 1, 2017 - June 30, 2022

## Table of Contents

Page

PREAMBLE .................................................................................................................. 1

ARTICLE 1 – BARGAINING UNIT ................................................................................ 1

ARTICLE 2 – NO DISCRIMINATION ........................................................................... 4

ARTICLE 3 – UNION SECURITY & CHECK-OFF ...................................................... 5

ARTICLE 4 – UNION VISITATION ............................................................................... 5

ARTICLE 5 – SHOP STEWARDS ................................................................................ 6

ARTICLE 6 – HIRING OF EMPLOYEES ...................................................................... 6

ARTICLE 7 – PROBATION ........................................................................................... 7

ARTICLE 8 – MANAGEMENT ...................................................................................... 7

ARTICLE 9 – NO STRIKE / NO LOCKOUTS ............................................................. 7

ARTICLE 10 – SENIORITY FOR EMPLOYEES ......................................................... 8

ARTICLE 11 – LAYOFF ................................................................................................ 9

ARTICLE 12 - DISCIPLINE AND DISCHARGE .......................................................... 9

ARTICLE 13 - WAGES & CLASSIFICATIONS .......................................................... 11

ARTICLE 14 - HOURS & OVERTIME ......................................................................... 12

ARTICLE 15 - VACATIONS ......................................................................................... 14

ARTICLE 16 – HOLIDAY PAY .................................................................................... 14

ARTICLE 17 - SERVICE CHARGES & INSPECTIONS ............................................ 15

ARTICLE 18 - BEREAVEMENT PAY .......................................................................... 20

ARTICLE 19 - JURY PAY ............................................................................................ 20

ARTICLE 20 - MEALS ................................................................................................. 20

ARTICLE 21 – UNIFORMS .......................................................................................... 21

ARTICLE 22 - LOCKERS AND SANITATION ........................................................... 21

ARTICLE 23 - UNION PINS ........................................................................................ 21

ARTICLE 24 - BULLETIN BOARD .............................................................................. 21

ARTICLE 25 - TRAINING PROGRAMS ..................................................................... 21

ARTICLE 26 - GRIEVANCE AND ARBITRATION ..................................................... 22

ARTICLE 27 - PENSION BENEFIT ............................................................................. 24

i

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

ARTICLE 28 - HEALTH BENEFITS ................................................................................. 26

ARTICLE 29 - SUCCESSOR CLAUSE ............................................................................. 27

ARTICLE 30 - RELIEF APPEALS.................................................................................... 28

ARTICLE 31 - PAID SICK LEAVE................................................................................... 28

ARTICLE 32 - GUEST SERVICE COMMITMENT .......................................................... 28

ARTICLE 33 - DRUG AND ALCOHOL POLICY............................................................... 29

ARTICLE 34 – ORIENTATION...................................................................................... 29

ARTICLE 35 – HOUSEKEEPING .................................................................................. 29

ARTICLE 36 - FAVORED NATIONS .............................................................................. 31

ARTICLE 37 - PARKING............................................................................................... 31

ARTICLE 38 - HEALTH AND SAFETY............................................................................ 32

ARTICLE 39 - CIVIL RIGHTS ....................................................................................... 32

ARTICLE 40 – IMMIGRANTS' RIGHTS........................................................................ 33

ARTICLE 41 - Hospitality Employees Advancement and Training (HEAT) Fund ......... 34

ARTICLE 42 - AGENCY EMPLOYEES IN HOUSEKEEPING............................................ 35

ARTICLE 43 - COMPLETE AGREEMENT ..................................................................... 36

ARTICLE 44 – DURATION........................................................................................... 36

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

# LABOR AGREEMENT

This collective bargaining agreement is entered into this __ day of March 2018 by and between Fontainebleau Florida Hotel, LLC, doing business as Fontainebleau Miami Beach (hereinafter termed the "Employer") and UNITE HERE Local 355 (hereinafter termed the "Union") to be effective on July 1, 2017, unless otherwise agreed.

## PREAMBLE

WHEREAS, the Union represents all of the employees in the unit set forth below, and

WHEREAS, both the Employer and the Union desire to establish general standards of wages, hours and working conditions, and

WHEREAS, both the Employer and the Union desire to establish and ensure a peaceful, speedy, and orderly adjustment of differences and grievances which may from time to time arise between the parties, and

WHEREAS, both the Employer and the Union desire to provide for the employees a meaningful, healthful, and profitable employment,

WHEREAS, both the Employer and the Union are committed to providing the finest possible guest experience in terms of luxury service and a total quality guest experience environment,

WHEREAS, all the parties to this CBA will continue to strive to foster improved teamwork, improved cooperation between employees, departments and managers so that the guest experience is enhanced and maximized,

WHEREAS, both the Employer and the Union will seek to implement these ideals, and reach the above goals, through a unified approach to all problems solving and work tasks so that no guest need is denied, or impacted by the failure of a manager or employee to take ownership of a problem, ignore an opportunity to actively resolve guest service issues no matter how small or removed from that person's area of responsibility,

WHEREAS, it is to the above ideals and standards that this contract is dedicated and must be interpreted by both parties so as to effectuate and implement these goals, and

WHEREAS, both the Employer and the Union desire to contribute to the stability and economic progress of the community in which both reside, now therefore it is agreed as follows:

## ARTICLE 1– BARGAINING UNIT

Section 1:  The Employer recognizes the Union as the exclusive bargaining representative for employees employed at Fontainebleau Miami Beach in the departments and classifications as set forth in Schedule A, but excluding all departments and classifications not listed in Schedule A as well as executives, department heads, managerial employees, security officers, International Hospitality Exchange Program students (IHEP), and all other supervisors as defined by the National Labor Relations Act.  The Employer agrees to provide the Union with advance notice of the start and end dates for any new classes of IHEP students and shall not utilize more than 35 IHEP students at any time or bring in any

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

new classes of IHEP students if there are no open Commis 1 or Commis 2 positions. During the term of this Agreement, the Employer will endeavor to hire locally for any open bargaining unit positions with a goal of reducing or eliminating the number of IHEP students.

Section 2: The Union and the Employer agree that supervisory personnel will not perform duties which are currently done by employees covered by the scope of this Agreement except in an emergency or on an occasional and necessary basis for the purpose of meeting a specific demand of service. Examples of such instances include, but are not limited to, unforeseen occurrences, instances of training, troubleshooting, a change in operational procedures, if unit employees are not readily available (until such time a unit employee is available).   Under no circumstances would this have the purpose or effect of eliminating any scheduled position or hours.

Section 3:  Employees in the following departments and classifications shall be included in the bargaining unit and shall be covered by the CBA:

| Vida |
| --- |
| Bar Back<br>Busser<br>Host/Hostess<br>Runner<br>Server<br>Service Bartender |

| Cafe 54 (EDR) |
| --- |
| Busser/Runner<br>Server/Busser |

| In room Dining |
| --- |
| Order Taker/Cashier<br>Server<br>Busser<br>Service Bartender |

| Private Bars |
| --- |
| Private Bar Attendant |

| Catering Banquets |
| --- |
| Banquet Bar Back<br>Banquet Bartender<br>Banquet Cashier<br>Banquet Porter<br>Banquet Server<br>Banquet Coffee Breaker<br>Banquet Linen Attendant |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

| Culinary |
| --- |
| Chef de Partie<br>Commis 1<br>Commis 2 |

| Stewarding |
| --- |
| Kitchen Worker 1<br>Kitchen Worker 2 |

| Warehouse and Receiving<br>Storeroom Clerk |
| --- |

| Purchasing |
| --- |
| Mail Clerk |

| Communications |
| --- |
| Telephone Operator |

| Front Service |
| --- |
| Baggage Handler<br>Bell Captain<br>Bell Dispatcher<br>Bellperson<br>Doorperson |

| Housekeeping |
| --- |
| Balcony Cleaner<br>Drapery Attendant<br>Houseperson<br>Turndown Attendant<br>Room Attendant<br>Room Attendant - Condo<br>Utility Porter<br>Guest Service Response Attendant<br>Wardrobe Attendant<br>Seamstress |

| Laundry/Linen |
| --- |
| Laundry Attendant<br>Linen Attendant |

| Internal Maintenance |
| --- |

3

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

| |
|---|
| Night Cleaner<br>Public Area Attendant<br>Utility Porter |

| |
|---|
| Engineering<br><br>Aquatic Engineer<br>Carpenter 1<br>Electrician 1<br>Electrician 2<br>General Maintenance<br>Kitchen Mechanic 1<br>Kitchen Mechanic 2<br>Laborer<br>Mechanic 1<br>Mechanic 2<br>Painter 1<br>Painter 2<br>Plumber 1<br>Plumber 2<br>Refrigeration/AC 1<br>Refrigeration/AC 2<br>Stationary Engineer 1<br>Stationary Engineer 2<br>Storeroom Attendant<br>Yardmen |

Section 4:  Employees in the following food and beverage venues shall not be included in the bargaining unit, nor shall they be covered by the CBA: All current and future specialty restaurants, lounges, and Outdoor bars/restaurants, in all "front of house" job classifications, including but not limited to:

- Host
- Bartender
- Bar Back
- Busperson/Runner
- Food Server/Gourmet
- Beverage Server
- Lead Beverage Server
- Sommelier Tea/Wine
- Apprentice Bartender/Bar Back

For clarity, Vida is the only restaurant outlet where "Front of house" classifications are included in the bargaining unit.  Employees in the Sous Chef, Chef de Cuisine, Artisan Baker Chef, Pastry Artist, and Pastry Artist Chocolate job classifications shall not be included in the bargaining unit, nor shall they be covered by the CBA.

## ARTICLE 2– NO DISCRIMINATION

There shall be no discrimination by the Employer or the Union against any employee on account of membership in or activity on behalf of or against the Union. In accordance with applicable laws, there

4

shall be no discrimination against any employee because of race, creed, color, national origin, sex, sexual orientation, gender identity, gender expression, or age in accordance with applicable Federal or State Law or local ordinance. The wage scales and all other conditions and benefits set forth herein shall apply equally to all persons, both male and female, employed under this contract.

## ARTICLE 3– UNION SECURITY & CHECK-OFF

Section 1: Employees shall have the right to self-organization, form, join, or participate in the Union and to bargain collectively, through representatives of their own choosing.

Section 2: The Employer shall deduct from salaries or wages of the employees covered hereby, the initial dues and monthly dues owing to the Union upon receipt from the employees of an authorization duly signed by the employee, requesting the Employer to make such deduction. When if such authorizations are signed and delivered to the Employer, the Employer shall make such deductions each month, unless said authorization is revoked in writing as provided for in the signed authorization card, and shall remit to the Union such monies thus collected before the tenth (10) day of the month succeeding the month for which the dues and fees are collected; or if such collection be made at the end of the month, then within ten (10) days from the date said collection is made. In the event an employee enters into any litigation with the Employer by reason of the operation of this Article, the Union shall assume the full responsibility for any judgment obtained by such employee against the Employer and the Union shall have the right to take over the defense of such action.

Section 3: The Employer shall not enter into any individual agreement with an employee covered by this Agreement concerning the terms and conditions of employment which varies from the terms or conditions of this Agreement.

Section 4: TIP Fund: The Employer agrees to deduct and transmit to the Treasurer of UNITE HERE TIP (To Insure Progress) Campaign Committee the amount of contribution specified for each payroll period or other designated period worked from the wages of those Employees who voluntarily authorize such contribution at least seven (7) days prior to the next scheduled pay period, on the form provided for that purpose by the UNITE HERE TIP Campaign Committee, unless said authorization is revoked.

These transmittals shall occur no later than thirty (30) days following the month in which the deduction was made, and shall be accompanied by a list setting forth as to each contributing Employee his/her name, and social security number for each Employee for whom a deduction has been made and the amount deducted by the payroll or other designated period and contribution amount. The Employer shall send these transmittals and this list to: Treasurer, UNITE HERE TIP Campaign Committee, 275 Seventh Avenue, New York, NY 10001.

## ARTICLE 4– UNION VISITATION

Section 1: Authorized representatives of the Union shall have admission to the premises of the Employer at all reasonable hours for the purposes of meeting with Employees concerning Union business such as wages, hours, and working conditions. However, such Union Representatives shall not engage or interfere with any employees during an employee's work time nor shall the Representative visit guest floors without the express authorization of management or unless accompanied by a designated Employer agent or manager. However, nothing in section shall prohibit the Union Representative from entering into areas such as the kitchens and/or housekeeping departments and/or public areas, but not guest floors, for the purpose of briefly announcing their presence on the property. Such visits shall not interfere with the conduct of the Employer's business

5

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

or with the performance of work by employees during their worktime.  Nothing in this Section shall prohibit a Union Representative from exercising rights afforded by the National Labor Relations Act.

Section 2: The representative shall make their presence known to the Employer or Security upon entering the premises and permission, therefore, shall not be unreasonably withheld. This provision is also applicable to any individuals accompanying the union representatives and upon the showing of appropriate identification.

## ARTICLE 5– SHOP STEWARDS

Section 1: The Union shall have the right to appoint shop stewards. The shop steward and/or union representative shall process grievances at all levels. The Union will notify the Employer of the names of all shop stewards and shall maintain with the Employer an up-to-date list thereof.

Section 2: All grievance proceedings shall be held on non-working time, unless the Union and the Employer agree to the contrary. Shop stewards shall be required to fulfill their obligations to the Employer and perform their job duties as any other employee covered by the Agreement. Stewards shall have the right, at reasonable times, to discuss grievances with employees and representatives at no expense to the Employer.  The exercise of this right shall in no way interfere with the performance of their duties as employees or the duties of other employees.

## ARTICLE 6– HIRING OF EMPLOYEES

Section 1: The Employer shall be the sole and final judge as to the suitability of the applicant for the vacancy. Nothing herein shall be deemed to abridge the Employer's right at any and all times to determine whom it shall hire.

Section 2: The Employer shall supply the Union, on a monthly basis a list of the names, addresses, social security number, and classification of all persons hired into bargaining unit within the past month.

Section 3: Promotion and Transfer: The Employer will post vacant positions for (5) calendar days on the television sets inside and outside of Cafe 54 and on the bulletin board at the north employee entrance.  The departments will make reasonable efforts to post job openings within their departments as well (although any failure to post positions or update the postings within the departments shall not be grounds for a grievance or arbitration). Current employees wishing to fill vacant positions shall complete their applications via the career website within five (5) calendar days after the posting period has begun. If no application is received from a qualified employee within the bargaining unit, applications will then be considered from outside applicants. Within the bargaining unit, qualified applicants will be selected based upon such factors as past experience in a particular outlet or classification, skill, ability, and performance. Where such factors are equal, outlet classification seniority or classification seniority as described in Article 10, Section 2 within the department of the vacancy, followed by hotel seniority for applicants from outside the department of the vacancy, shall be the determining factor. Except where classification seniority applies, for the purposes of this section only, Culinary and Stewarding shall be considered a department.

In the event that a bargaining unit employee transfers to a new classification, position or department, he/she shall have a thirty (30) day on-the-job training/trial period in order to qualify for the position.  If at any time during such trial period the employee or the Employer determines that he/she should not continue performing such job, that employee, with notification to the Union, shall be returned to their former position.  The employee so returned shall not suffer a loss of seniority or wages, although

6

any employee hired to replace such employee in the prior position will be subject to layoff or return to their prior position.

### ARTICLE 7– PROBATION

Section 1: All newly hired employees shall work a ninety (90) day probationary period, which ninety (90) days must be accrued during which time the Employer will review the employee's ability and demeanor and during which time the Employer may discharge said employee with or without cause and without right to review by the grievance and arbitration procedure.

Section 2: Probationary employees are not eligible for leave of absence.

Section 3: Probationary period may be extended by up to thirty (30) calendar days by the Employer with written notice to the Union if the employee has not worked 45 shifts in his/her first ninety (90) calendar days.

### ARTICLE 8– MANAGEMENT

Section 1: The Employer retains the exclusive right to plan, determine, direct, and control the nature and extent of all of its kitchen, housekeeping, dining room, bar and allied operations, maintenance requirements, and all other departments and to install or introduce any new or improved production methods or facilities and to maintain efficient operations. The Employer retains its inherent right to direct and control its working force personnel and to determine the number of employees required. The Employer retains all rights and authority, except as specifically abridged, delegated, or modified by this collective bargaining agreement.

Section 2: The Employer shall have the right to make such reasonable rules and regulations, and revise the same, as it may deem necessary and proper for the conduct of its business, provided, however, that such rules and regulations shall not be inconsistent with this Agreement. In accordance with the NLRA, the employer shall notify the union of proposed changes involving mandatory subjects of bargain under the National Labor Relations Act that are not addressed elsewhere in this agreement, and will give the union an adequate opportunity to bargain prior to implementation. Should no agreement be reached as a result of bargaining or in the absence of bargaining, the Union may timely contest the propriety of the Employer's rule through the grievance and arbitration process.  The Company Handbook, as of June 26, 2017, is incorporated by reference into this Collective Bargaining Agreement.

### ARTICLE 9– NO STRIKE / NO LOCKOUTS

Section 1: Both the Union and the Employer recognize the service nature of the hotel business and the duty of the hotel operators to render continuous and hospitable service to the public in the way of lodging, food, and other necessary hotel accommodations.

Section 2: Therefore, the Union agrees that it will not call, engage, participate, or sanction any strike, sympathy strike, stoppage of work, picketing of the hotel, sit-down, sit-in, boycott, refusal to handle merchandise, or any other interference with the conduct of the Employer's business, for any reason whatsoever; nor will it interfere with any guest or tenant at the hotel, while he is a guest or tenant occupying a room or space, who sells or exhibits nonunion- made merchandise or employs non-union help.

Section 3: The Employer agrees it shall not lockout its employees or any part of its employees.

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Section 4: Any such act by the Union, any bargaining unit employee, or the Employer shall be a violation of this Agreement, and the same, including any and all disputes in reference thereto, shall be submitted as any other dispute under this Agreement to arbitration.  This provision, however, shall in no way limit either Party's ability to seek immediate injunctive relief from a court in the event of any breach or threatened breach of this Article by the Union or any bargaining unit employee(s) or the Employer.

Section 5:  During the term of this Agreement there shall be no lockout, strike, or stoppage of any kind, pending the determination of any complaint of grievance and for a period of the ten (10) days after the rendition of the arbitrator's award and then only for the refusal of either party to abide by such arbitrator's award.

## ARTICLE 10– SENIORITY FOR EMPLOYEES

Section 1:  The seniority provisions hereinafter set forth shall have application only to all bargaining unit employees after the completion of the probationary period.

Section 2: Seniority with the Employer shall be computed from the day an employee commences work.

1) Hotel seniority shall be defined as an employee's last date of hire by the hotel in a position without a break in service resulting in a loss of seniority.

2) Classification seniority shall be defined as an employee's last date of hire into his/her current classification where outlet classification seniority is not applicable.

3) Outlet Classification seniority shall be defined as an employee's last date of hire as a Chef de Partie, Commis 1 or Commis 2 in the following outlets: Pastry, Butchery, Garde Manger, Banquets, Stripsteak by Michael Mina, Hakkasan, Scarpetta, Fresh, Pizza & Burger by Michael Mina, La Cote, and Blade and a combination outlet of Vida, and In Room Dining.

Application of Seniority:

a) Hotel seniority shall apply to benefits.

b) Classification seniority shall apply to layoffs and recall. However, for culinary employees, Hotel seniority shall apply to layoffs and recall.

c) Preference for shifts, days off, holidays, and vacations shall be by classification seniority, and outlet classification seniority where applicable, provided that, such preferences do not affect the best interest of the Employer as determined by reasonable exercise of its discretion.

Section 3:  Seniority shall continue to be considered unbroken when an employee cannot work while on a leave of absence for accident, illness, pregnancy related disability, induction into the Armed Forces of the United States of America, or such other conditions as authorized under FMLA, or when granted a personal leave of absence by the Employer, provided, however, such voluntary leaves shall not exceed a period of one (1) month. The Employer and Union may, however, for good cause, provide for extensions.

Section 4:  Employees may lose seniority for:

a) Voluntary quit, or

8

b) Discharge for cause, or
c) Failure to respond to recall notice mailed to last known address within one (1) week, or
d) Lay-off for a period of over one (1) year or
e) Absent for longer than 6 months due to illness not compensable under Florida Industrial Insurance Act, or
f) Absent longer than authorized leave of absence.

Section 5: When two employees are hired on the same date, seniority shall be determined by using the last four digits of the employee's valid Social Security number (highest number equates to most seniority).

## ARTICLE 11– LAYOFF

Section 1: The Employer shall have the right during the slack periods of business to reduce the number of employees in the various classifications as it may deem appropriate in its best business judgment, provided the Employer observes all provisions of this Collective Bargaining Agreement.

Section 2: The Hotel shall provide the Union with advance notice of a layoff within a reasonable time after it decides a layoff will occur and an opportunity to bargain about a potential layoff over issues such as selection of employees for the layoff and alternative procedures. Bargaining shall be expedited and commence immediately. If no agreement is reached within five (5) business days of receipt of the Hotel's notice, the Hotel can proceed with the layoff as originally proposed, unless otherwise mutually agreed.

Section 3: A recall list shall be established that will include all employees laid off from employment. A laid-off employee shall have recall rights for one (1) year. Recall shall be accomplished in reverse order of layoff, by outlet classification, or classification seniority, whichever is applicable under Article 10, Section 2. Employees shall be notified of a recall by certified mail to the employees' last known address in English, Spanish and Creole. Employees on the recall list are responsible for updating their current addresses. The Hotel shall notify the Union of any recalls. An employee may be recalled to any position for which he/she is qualified, in the judgment of the Hotel. An employee may refuse recall to a position outside of his/her classification and will remain on the recall list until a position becomes available within his/her classification for up to one (1) year after his/her layoff. An employee who chooses to accept recall must accept recall within forty-eight hours (48 hours) from actual receipt or personal communication of the recall notice or five (5) calendar days, whichever is less, and must report to work no later than seven (7) calendar days from the date of receipt or notice, or waive all recall rights. An employee on layoff shall be automatically removed from the recall list 1) upon non-response to a recall notice received or failure to timely report to work after accepting recall; 2) one (1) year following layoff; or 3) ifs/he accepts another position with the Hotel.

## ARTICLE 12- DISCIPLINE AND DISCHARGE

Section 1: The Employer shall have the right to discipline or discharge for just cause. The words "just cause" as used in this Agreement shall include the following items:

a) Drinking or being under the influence of alcoholic beverages or use of controlled substances during working hours.
b) Insubordination.
c) Dishonesty.
d) Fighting on the premises.

9

e)  Violation of any house rule or regulation.
f)  Insolence or lack of courtesy to the Employer or any guest of the Employer.
g)  Failure to perform the services required by the position held by the employee.
h)  Lack of proper personal appearance, sanitation, and cleanliness.
i)  Inefficiency.
j)  Physical condition which endangers the health of a guest, fellow employee, or the employee himself.
k)  Failure to report for work, except in the case of established illness, which must be verified by a medical certificate or satisfactory evidence.
l)  Destruction of hotel property.
m)  Workplace harassment.
n)  Violations of safety and security policies and procedures.

The above-enumerated list is not all-inclusive and the Employer may discharge employees for other just causes.

Section 2:  A warning notice issued or other disciplinary action form shall become null and void one (1) year after the date of issuance and may not thereafter be used as a basis for or in support of any subsequent disciplinary action. Written discipline notices issued to employees must contain information and reasons for which the notice is issued. A copy shall be signed by a representative of the Employer and also by the employee. By signing said notice, the employee acknowledges receiving the disciplinary notice, but shall not be considered an admission of guilt.

In order to afford employees due process and the Employer proper time to investigate, such discipline notices will be issued no later than six (6) days (excluding Saturdays, Sundays, and Holidays) from the day after the occurrence giving rise to the discipline. It is understood that the receipt of a "shopper's report" by the Employer constitutes an "occurrence giving rise to the discipline." If an employee is not scheduled to work during said six (6) day time period, the Employer will request from the Union a timeline extension and such timeline extension will not be unreasonably withheld or limited. Disciplinary notices issued to On-Call Banquet employees or other employees who are not at work for an extended period may be sent via e-mail with a copy sent to the Union, if the employee is not available to meet within the timeline.

Section 3:  All employees are expected to comply with the Employer's standards of behavior and performance. Any noncompliance with these standards may result in discipline. Under most circumstances, the Employer will apply a policy of progressive discipline in which it attempts to provide employees with notice of deficiencies and an opportunity to improve. The Employer retains the right to administer discipline that is appropriate to the violation in compliance with the just cause requirement of this Agreement. Progressive discipline is defined as: Verbal Warning, Written Warning, Final Written Warning, and Termination. Suspension pending investigation does not constitute discipline. Disciplinary suspensions from 5 to 10 days are an additional form of discipline and are not a mandatory part of progressive discipline. Disciplinary suspensions of ten (10) days are reserved for serious violations that could otherwise warrant termination.   Once an employee completes the disciplinary suspension period, future violations will be treated according to the progressive discipline policy.   All disciplinary suspensions must have written approval of Human Resources prior to administering to the employee.

Section 4: Employees with less than three (3) years' service, and Bell Captains regardless of year of service, may be offered before, after or at the time during the grievance process two (2) months' pay including the higher of declared or assigned tips in lieu of processing a grievance and arbitrating the discharge. In the event the employee declines this offer when made by the Employer, the Union will not

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

arbitrate unless it objectively determines that, in its judgment, the discharge constituted a flagrant miscarriage of justice.

## ARTICLE 13- WAGES & CLASSIFICATIONS

Section 1: The scale of wages to be paid by the Employer is as shown on the schedule attached and marked Schedule A.  Schedule A shall be considered minimum wages for the categories covered thereby, and nothing herein shall prevent the Employer from granting increases for superior workmanship, exceptional performance, or versatility after consultation with Union. The granting of such increases shall not affect the basic wage rate as specified in Schedule A. It is agreed that employees' compensation at higher rates may be returned to the scale published herein at the sole discretion of the Employer.

Section 2: All employees' rates of pay shall be on an hourly basis and there shall be no guarantee of wages or pay other than on an hourly basis. The Employer will pay wages no less frequently than twice per month.

Section 3: Employees may be required to perform work in more than one department or classification provided, however, that any employee performing work in more than one department or classification shall receive the rate of pay of the highest classification in which he is performing work during the period he is performing such work in more than one department or classification. Meal periods and relief periods not exceeding one hour in time are excepted from this provision.

Section 4: Should any classification not listed in this Agreement be desired to be established during the term hereof, and said new classification falls within the jurisdiction of the Union, then the parties agree that they will, upon ten (10) days' written notice, meet to negotiate the rate to be paid.

Section 5: Employees hired after the execution of the Agreement will be paid the new hire rate set forth in Schedule A.  In the event the new hire wage increases during the employee's first year, he shall receive such increased new hire rate of pay.

Section 6:

a) No employee hired prior to the execution of this agreement shall receive a wage less than the new hire rate for his/her classification in Schedule A.
b) All employees shall be advanced to the one (1) year and two (2) year rates in Schedule A on their one (1) year and two (2) year anniversary date, respectively.
c) As of ratification of this Agreement, all employees who have reached their one (1) year or two (2) year anniversary date shall be advanced to the applicable one (1) year or two (2) year rate. No employee employed more than (1) year or two (2) years shall receive a wage less than the one (1) year or two (2) year rate, respectively.
d) Effective July 1, 2018, the wage rate of employees with three or more years of service on that date shall be increased by $0.45 for non-tipped employees, and $0.20 for all tipped employees, except for banquet servers whose rate shall be increased by $0.10.  Each July 1 of 2019, 2020, and 2021, the wage rate of employees with three or more years of service on that date shall be increased by $0.50 for non-tipped employees, and $0.20 for all tipped employees, except for banquet servers whose rate shall be increased by $0.10.
e) Wage rates in Schedule A for new hires, one (1) year, and two (2) years, shall each be increased for non-tipped and tipped employees by the same wage increase described in (d) above for each year from 2018 through 2022.

11

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

f)   An employee required by the Employer to act as a trainer will receive a premium of $0.45 per hour spent training each employee trained.

g)   Benefit Rate: Tipped employees earning less than nine dollars ($9.00) per hour shall be paid a minimum of nine dollars ($9.00) per hour for benefit hours, including sick days, holidays, mandatory meetings and vacations as of January 1, 2018. This rate shall be increased by $0.25 beginning January 1, 2019 and each January 1 of this Agreement.

Section 7: Night Bellperson, Night In-Room Dining Servers, and Night Banquet Set- Up Attendants shall be paid $1.00 above the Day Bellperson, In-Room Dining Servers, and Banquet Set-Up Attendants. This Night Differential shall apply to those employees for whom the majority of hours worked falls between 11:00 p.m. and 7:00 a.m.

Section 8: Within 90 days of ratification of the CBA, the Union and the Employer will meet to discuss the job duties of the Commis 1 and Commis 2. The parties agree to discuss any Commis 1 and Commis 2 employees who may be misclassified based on duties routinely performed. Should an employee be mutually found to be misclassified, the employee will be appropriately reclassified.

## ARTICLE 14- HOURS & OVERTIME

Section 1: Employees shall work an eight (8) hour day. The normal work week shall be forty (40) hours. The Employer shall maximize the forty (40) hour work week schedules by seniority within classification. This shall not constitute a guarantee of forty hours for all employees.

Section 2: All employees shall be granted a one half (1/2) hour unpaid lunch.  Employees who work twelve (12) hours or more due to overtime will be granted an additional fifteen (15) minutes unpaid break.

Section 3:      All work performed over forty (40) hours in one week (12:01 A.M. Friday through 12:00 Midnight Thursday) shall be paid at time and one half.  The employer has the right to schedule a reasonable amount of overtime according to Federal law.  In the event of necessary overtime, it shall be offered by seniority within classification on a voluntary basis.  For unexpected overtime of a short duration within a day (not more than 4 hours), overtime shall be offered first to those employees within the classification currently working the shift.  If sufficient coverage is not available, additional overtime shall be offered by seniority within the classification on a voluntary basis to employees not currently working the shift.  The method of outreach shall be mutually agreed upon by the Union and the Employer for each classification.  In the event that there are not sufficient volunteers, the Employer shall require overtime by inverse seniority within classification.  All employees who work overtime on a voluntary or involuntary basis must be qualified to perform available work.  It is understood that the Employer will first offer additional shifts by seniority to employees within the classification who have not otherwise been scheduled for forty (40) hours before offering additional shifts by seniority to employees who have been scheduled for forty (40) hours.

Section 4: All work performed in a regular workweek (12:01 A.M. Friday through 12:00 Midnight Thursday) on the sixth day shall be paid at time and one half.

Section 5: All work performed in a regular workweek (12:01 A.M. Friday through 12:00 Midnight Thursday) on the seventh day shall be paid double time.

Section 6: All employees shall have two (2) regular, consecutive days off.  The Employer must give four (4) calendar days' notice of intent to change regular days off, except in emergencies.  Regular,

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

consecutive days off shall only be changed due to a legitimate business need such as shortage of available hours or a shortage of available staff.  Schedules shall be posted four (4) days in advance.

Section 7: All persons scheduled to work and who report shall be guaranteed four (4) hour's pay; all persons scheduled to work and who commence work shall be guaranteed eight (8) hour's pay.

Section 8: No overtime rate will be paid for time worked in the following classifications: banquet servers/coffee breakers, banquet bartenders, banquet bar back, Vida server, and In Room Dining server.

Section 9: The hotel shall have the right to require short shifting of existing employees at a premium pay rate of $0.15 per hour over the contract rate. Short shifting will only be permitted under the following circumstances:

a)  Only in Food and Beverage Departments.
b)  Where the hours of operation are less than 8; where the hours of operation are less than 16 hours, there shall be one full shift and one short shift.
c)  Where staffing needs are reduced for the next meal period.
d)  A short shift shall be no less than 4 hours.
e)  Short shifting shall not affect seniority or full time regular employee status.
f)  Bellpersons and Bartenders: In instances where the needs of the Hotel require an additional short shift during peak times, the least senior employee in the classification shall be required to take that shift instead of their regular shift if no other employee bids the shift.
g)  Short shifted employees shall have first option to return to a full time status.
h)  Voluntary Short Shifts: Voluntary short shifting shall be allowed provided that there is no abuse of the provision and that there is no retaliation directed at employees who refuse the short shift.
i)  Short shifted employees who work less than 25 hours in a week shall retain their full-time seniority status.

Section 10: Split shifts will be permitted on an employee only voluntary basis, except in the Banquet Department.

Section 11: Reasonable Request: It is agreed that no employee will refuse reasonable request to perform job duties except for health and safety reasons.

Section 12: Combined Classifications: It was agreed that the following classifications would be combined as needed: Cashier/Host, Room Service Ordertaker/Cashier, and Busperson/ Runner. The Employer shall have the right to discuss with the Union, during the term of this Agreement, combining job classifications, and the Union agrees to discuss, and consider any job classification combination proposed by the Employer.

Section 13:  Provided that it does not violate another provision of this agreement, any employees transferring into a new bargaining unit position will be paid at the new hire rate for the new position. For the Culinary department, employees who make a lateral transfer to a similar position in a different outlet (i.e. from Chef de Partie in Vida to Chef de Partie in Cafe 54 or Scarpetta) shall remain at the same rate of pay and receive normal wage increases. Culinary employees who are promoted to a new position (i.e. from Commis I in Vida to Chef de Partie in Cafe 54) shall receive the rate of pay commensurate with years of service for the new classification.  Similarly, Kitchen Workers who are promoted from KW2 to KW1 shall receive the rate of pay commensurate with their years of service of the new classification.

13

Ex. A to Local 355 Counter Claim (D.E. #17-1)

Section 14: When business needs require the Employer to reduce the work schedule, it may request volunteers for a reduction in their work hours, in the presence of a Shop Steward or a Union Representative, and the volunteers will sign the appropriate volunteer form.

Section 15: Voluntary Early Outs: Voluntary early outs shall be allowed and employees shall be paid for actual hours worked or four (4) hours, whichever is greater. In the event that an early out is the result of the exclusive request of an employee to leave, the employee will only be paid for hours worked. All voluntary early outs must be approved by management. The Employer may in slow periods ask for volunteers for early outs. The volunteers will sign the appropriate volunteer form.

## ARTICLE 15- VACATIONS

Section 1: Each employee shall be entitled to receive one (1) week paid vacation upon the completion of one (l) year of continuous service; two (2) weeks paid vacation after the completion of two (2) years service, three (3) weeks paid vacation after the completion of ten (10) years service, and four (4) weeks paid vacation after the completion of fifteen (15) years service.

Section 2: The pay for non-tipped employees for such week or weeks of vacation shall be at the normal rate of an employee, i.e., his hourly rate times his normal hours of work per week. The hourly rate for tipped employee for such week or weeks of vacation shall be the benefit rate or his normal rate, whichever is higher, times their normal hours of work per week.

Section 3: Employees who have worked a minimum of one thousand two hundred eighty hours in their anniversary year shall be entitled to their vacation benefits.

Section 4: Any employee with over one-year of seniority shall be eligible upon lay off for pro-rata vacation pay. The formula for the pro-rata vacation pay shall be the same percentage but not to exceed 100% of the employee's regular vacation as the number of working days by the employee in the year is one thousand two hundred eighty hours.

Section 5: Any employee whose seniority is broken shall be treated as a newly hired employee for vacation purposes.

Section 6: Employees shall receive vacation pay in the pay period preceding vacation, provided that the employee makes a proper and timely request.

## ARTICLE 16– HOLIDAY PAY

Section 1: The following are paid holidays that will be paid at the benefit rate or the normal rate of pay, whichever is greater, for tipped employees. All others will be paid at the regular hourly rate.

- New Year's Day (January 1)
- Memorial Day (Last Monday in May)
- Independence Day (July 4)
- Labor Day (First Monday in September)
- Thanksgiving Day (Fourth Thursday in November)
- Christmas Day (December 25)

Section 2: All employees, who have been employed ninety (90) days or more, shall be entitled to receive pay for holidays occurring after the 90 days. If the Employer is temporarily closed on any of the above named holidays the Employer shall name another holiday in lieu thereof. To be eligible for the

14

holiday, an employee shall be required to work the full scheduled day prior to and the full scheduled day following the holiday. If the holiday falls on the employee's scheduled day off or during his vacation period, the employee will receive holiday pay in lieu of time off for the holiday. If the employee is scheduled to work and calls-off on the holiday, he shall not be eligible for the holiday pay. Employees who are on approved paid leave shall be eligible for holiday pay. The Employer may, if the granting of time off for the holiday interferes with its business operation, elect to give the employee holiday pay in lieu of time off for the holiday. This will be kept at a minimum insofar as possible.

## ARTICLE 17- SERVICE CHARGES & INSPECTIONS

Section 1: Effective the date of execution of this Agreement, there shall be added a twenty percent (20%) charge as a service charge for the room service server for all items ordered off the Room Service menu and all items off the In Room Amenities menu. Bussers shall receive one-and-one-half percent (1.5%), order takers shall receive one-and-one-half percent (l.5%), and servers shall receive (15%) fifteen percent. The delivery charge and gratuity will be listed separately on guest checks. The room service server must notify guests that the gratuity is already included in the check. Complimentary amenity to hotel guests will incur a delivery fee paid to employees of $3.00 per delivery. Delivery of water, soda, juice, or other packaged items for office staff consumption will not incur a delivery fee.

Section 2:      Upon request, the Vice-President of Human Resources shall supply the Union with appropriate employer records to check service charge, wages, hours, and other conditions of employment. To the extent practicable, BEOs shall be posted 24 hours in advance for each function and will include all relevant information including, but not limited to, the time, date, duration, and location of the function, prices, discounts, and service charge.

Section 3: A 14.75% service charge shall be distributed among the servers, coffee breakers, bartenders, barbacks, and set-up porters as described below. Effective on January 1, 2019, this amount shall be increased to 14.875%, to 15% on January 1, 2021, and to 15.125% on January 1, 2022. The breakdown of distribution is as follows:

| SERVERS/COFFEE BREAKERS | 1 point |
| BARTENDERS | 2/3 point |
| BARBACK | 1/3 point |
| SET-UP PORTERS | 1/4 point |

On January 1, 2019, the bartender distribution shall be increased to 4/5 point.

Upon ratification of this Agreement, Coffee Breakers will be added as a classification under the Agreement. All full-time Banquet Servers who are currently listed on the schedule as Coffee Breaks AM & PM will be grandfathered into the new classification. Such employees will not be required to apply for the Coffee Breaker position and will maintain current classification seniority dates in the new classification. Any employees added to the Coffee Breaker classification will be placed at the end of the coffee breaker classification seniority list. Coffee break duties shall be principally performed by the Coffee Breakers. If additional Coffee Breakers are needed after all available Coffee Breakers are scheduled, banquet servers may be scheduled. Banquet servers may also be scheduled for coffee break(s) when there are not sufficient other coffee breakers scheduled during the same time period.

It is understood that, among employees, only the Union categories that are listed shall have a share in the service charge above. The above service charge shall be pooled and calculated weekly and paid out following each two week pay period. The service charge shall be divided by the hours worked

15

(or a portion thereof, if applicable) for each employee times the point percentage for the applicable classification.

When extra servers are needed to staff a Banquet function or a "pop-up" event (a function that had not been scheduled at the time the schedule was posted), the Hotel shall make every effort to notify employees twenty-four (24) hours prior to the event. Using the Hotline email, the Hotel shall first call upon Full-Time Banquet Servers, then Full-time Banquet Coffee Breakers, then Full-time Banquet Bartenders hired into their classification prior to January 1, 2018, then other Union classified front of the house Banquet personnel hired into their classification prior to January 1, 2018 who are not scheduled to work before scheduling on-call Banquet personnel, followed by employees from other classifications who are certified through the cross-training program.  In this case, qualified banquet personnel shall have priority before qualified employees from other departments.   Any employee promoted to full-time banquet bar back, full-time bartender or full-time banquet cashier after January 1, 2018 shall be dual classified as on-call servers for the purposes of picking up available server shifts, and shall be integrated into the on-call server seniority list based on their house seniority date.  This dual classification shall not apply to promotions to full-time Server or Coffee Breaker.  For Coffee Breaks, the Hotel shall first call Full-Time Coffee Breakers before calling Full-time Banquet Servers and then will follow the process above. Notification of the event will include a description of the event (breakfast, lunch, dinner, etc.). All full-time employees will be given a minimum of ten (10) minutes to respond before on-call employees are notified. Shifts will be awarded to those who make themselves available by the designated time and will then be awarded by classification seniority in the same manner as the weekly schedules.  It is understood that employees must have the skills and ability to perform Banquet Server duties. Hospitality suite functions shall be handled in the same fashion as banquet functions. If business needs demand that Banquet employees be cut or called-off from a shift, those employees who picked up the shift using the Hotline will be called-off before those employees who were originally scheduled to work the shift by inverse classification seniority.

In the event that the Hotel receives a "pop-up" event on the day of the event, the functions shall be offered to full-time employees currently on property and distributed by seniority before notifying on-call servers.

It is understood that a banquet server/coffee breaker may be utilized as a "'greeter" for no more than thirty (30) minutes during any one function.

Banquet Servers and Coffee Breakers may be scheduled for a minimum of three (3) hours.

All shifts being given away by a full-time server/coffee breaker will be returned to the Employer by 9:00 a.m. Tuesday and redistributed via the Hotline Email in order of Seniority.

Employees who call out for a shift are permitted to work their remaining scheduled shifts on the same day, but will still be counted as a missed shift under the Attendance policy (unless the employee uses their paid sick leave to cover the absence).

Employees will not be allowed to give up shifts within their classifications in order to work outside of their classification on the same day.

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Employees who work outside of their classification shall be paid according to the classification they are working for that shift, for both the hourly wage and the "tip point".

Employees who give away a shift are not permitted to pick up the same shift again, but are permitted to pick up a shift in their classification at a different time in the same day.

Section 4: House paid functions such as, but not limited to sales and promotion, or internal events shall be paid at a flat rate per server/coffee breaker/bartender as follows:

| | |
|---|---|
| Breakfast | $30 to $35 (beginning January 1, 2019) |
| Lunch, passed receptions, and coffee break | $30 to $35 (beginning January 1, 2019) |
| Heavy reception | $55 |
| Dinner | $65 to $70 (beginning January 1, 2019) |
| Offices | $30 to $35 (a.m. & p.m. beginning January 1, 2019) |

All flat rate amounts shall be placed in the pool, calculated weekly, and paid out following each two week period, based on hours worked (or a portion thereof, if applicable) using the point system in Section 3 above.

Section 5: The Passover rate shall be applied per the table below. During Passover, employees will only work breakfast and lunch or lunch and dinner. Triple shifts are on a voluntary basis only. This money is pooled for those employees who work the Passover program. The following rates are not inclusive of hourly wages:

| | |
|---|---|
| 2018 | $24.50 |
| 2019 | $25.00 |
| 2020 | $25.50 |
| 2021 | $26.00 |
| 2022 | $26.25 |

Section 6: Service Fees.  It is understood that the Hotel at times collects additional fees for Banquet functions.  In the event additional fees are collected from a group, the following percentage of said fees will be placed in the tip pool:

| | |
|---|---|
| Additional Bartender fee: | 50% |
| Additional Server/coffee breaker fee: | 50% |
| Double set-up fee | 50% |
| Excessive Clean-Up fee | 50% |

Section 7: An on-call banquet server must be available for 50% of the shifts available in a six (6) month period or forfeit the right to be an on-call server, unless the Employer has approved a written request by the employee for a block of time that the employee will not be available.

Section 8: Once the Employer has exhausted all qualified employees covered by the CBA, in accordance with the company's training program for Banquets, the hotel will have the right to go to outside sources to work said events.

17

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Section 9: In the event of a banquet involving ethnic cuisine that falls outside of the expertise of the current staff, the Employer reserves the right to utilize outside professional personnel to oversee the culinary function. The Company shall make its best efforts not to displace any culinary employees.

Section 10:  Set up: Hours worked by set-up personnel where there is a BEO with no associated revenue shall be paid at a $10.00 per hour per porter premium directly to the portion of the service charge pool for porters.  Such hours will not be included in the pool for servers, bar backs, and bartenders.

Section 11: Banquets Cash Sales/New Years

1) Cash and Carry - This covers the sale of retail items, including but not limited to:  coffee cart products, snacks, sandwiches, breakfast and/or lunch items. Banquet employees who volunteer for Cash and Carry shall be paid $15.00 per hour, plus base rate for all Cash and Carry hours worked, but will not be included in the service charge pool. If within five (5) days of an event, insufficient volunteers (full time and on call) have been obtained to cover the Cash and Carry shifts the Hotel requires, Cash and Carry shift assignments will become mandatory based on reverse order of the full time seniority (on a rotating basis) and employees so assigned on a mandatory basis shall be paid $10.00/hour, plus their base rate for all Cash and Carry hours worked. Any guest added gratuity for Cash and Carry sales shall be pooled among, and paid to, the servers working the function/event. Cash and Carry hours worked will not be included in the service charge pool.

2) Restaurant Cash Sales - This covers banquet servers/coffee breakers who work events such as, but not limited to breakfast, lunch or dinner buffets and Holiday cash meals, excluding New Year's Eve (which is covered below). Banquet servers/coffee breakers who volunteer for restaurant  cash sales will be paid at the rate of $10.00/hour per server/coffee breaker and 18% of Food and  Beverage sales to the server(s)/coffee breaker(s) who worked the shift, as such percentages are typically calculated and applied, but not as part of the tip pool. If within five (5) days  of the event the Hotel has not filled the restaurant cash sales shifts it requires with  volunteers, the Hotel will schedule banquet servers/coffee breakers to work the shifts it requires on a  mandatory basis based on reverse order of full time seniority (on a rotating basis).  Such employees will be paid $10.00/hour per server plus their base rate and 18% of Food and Beverage sales to the server who worked the shift on a mandatory basis.  Payments to servers/coffee breakers scheduled on a mandatory basis will be part of tip pool.  Any guest added gratuity for restaurant cash sales shall be pooled among, and paid to, the servers/coffee breakers working the function/event.

3)       Banquet Cash Bars - Any guest added gratuity for banquet cash bar sales shall be pooled among, and paid to, the Bartenders working the function/event.

4)       New Year's Eve

New Year's Eve is considered from 6:00 pm December 31st until 6:00 am January 1st (for Set Up Porters and Linen Attendants the hours are from 6:00 am December 31st until 6:00 am January 1st).  Banquet employee who work during these hours on functions NOT associated with Hotel Sponsored Special Event(s) (e.g. a wedding or private gala), will be paid their portion of the regular weekly banquet tip pool plus the rates shown below:

| | |
|---|---|
| Servers/Coffee Breakers | $50 per hour |
| Bartenders | $40 per hour |
| Barbacks | $20 per hour |
| Set Up Porters/Linen Attendants | $15 per hour |
| Cashiers | $25 per hour |

18

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Those Banquet employees who work during the hours above on functions associated with the Hotel Sponsored Special Event(s) (e.g. the outside NYE party or an inside event put on by the Hotel, such as a black-tie dinner party) will be paid the hourly rate set forth above, plus will be included in a separate tip pool on an 18% Service Charge for the Hotel Sponsored Special Event(s) only and those hours will not be included for regular weekly banquet tip pool.

Section 12: The bell person gratuity for all group tours and pre-arranged group movements will be $12.00 per person in and out. These rates shall be increased to $13.00 on January 1, 2019 and $14.00 on January 1, 2021.  The Hotel shall make reasonable efforts to negotiate porterage. If a group customer does not agree to provide porterage, then the contract shall provide that it shall be the obligation of the customer to notify arriving members of the group that porterage is not being provided and that arriving guests utilizing the bell department for baggage handlings shall be on a gratuity basis. Where no such porterage has been agreed to for group tours or pre-arranged movements, bell staff shall be paid $2.50 per room for all groups with organized group movements (i.e., motor coach, shuttles, mini-bus, fleets of limousines or sedans).  For all other groups where no porterage has been agreed to, bell staff shall be paid $1.00 per room.

The distribution of information and marking materials to guest rooms for clients and guests shall be done by bell person help, as business conditions dictate, or except in case of emergency or client request.

Closed door and open door distributions to rooms by bell staff shall be paid as follows:

Hotel Delivery Fees Charged to House Account

      In Room               $3.00   Outside or under door   $1.75

Hotel Delivery Fees Charges to Convention Master Account

| Per guest for Up to 3 Items | $4.00 ($1.00 for each additional item) for contracts entered after ratification and $4.50 effective January 1, 2019 |
|---|---|
| Outside or Under Door | $2.50 and $3.25 effective January 1, 2019 |

| Luggage Delivery: | 2017 | 2019 | 2021 |
|---|---|---|---|
| Leisure Guest not Present | $5.00 | $5.25 | $5.50 |

| Room Change: | 2017 | 2019 | 2021 |
|---|---|---|---|
| Hotel Request | $4.25 | $4.50 | $4.75 |
| Newspaper | $0.50 per room (to be paid to employees who make these deliveries) | | |

| Deliveries to Hotel Personnel Staying at Hotel | |
|---|---|
| Outside the Door | $1.00 |
| Inside the Room | $1.50 |
| Multiple Items (collectively) | $2.00 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Section 13: The service charge at VIDA shall be eighteen percent (18%). Five percent (5%) of liquor sales shall be distributed to the Bartenders. The difference between this and eighteen percent (18%) is distributed as set forth below:

- Bussers 29%
- Hostess 3%
- Servers 68%

Any additional non-cash gratuity above the service charge paid on the bill will be paid as follows: 17% shall be paid to the busser pool.  The remaining additional gratuity will be paid to the individual server who serviced the table.

Section 14:  Private Bar: The commission percentage distributed to the Private Bar Attendants is 3.13% for each item purchased.  Effective January 1, 2018, the commission percentage will be increased to 3.25%.  This amount will be increased by .125% on January 1, 2020 and January 1, 2022.

## ARTICLE 18- BEREAVEMENT PAY

Section 1:  Employees who wish to take time off due to the death of an immediate family member should notify their manager immediately. "Immediate family" is defined as the employee's spouse, domestic partner, parent, step-parent, grandparents, brother or sister, step-brother, step-sister, child, grandchild, child's spouse, employee's spouse's or domestic partner's parent, grandparent, child, or sibling. The Employer may ask for verification in writing.

Up to three (3) consecutive scheduled days of work will be provided to employees. Excluding on-call employees, Bereavement Pay will be paid if the employee misses already scheduled days of work. On-call employees will be granted up to three (3) consecutive scheduled days of work without pay. Bereavement leave does not count as hours worked in the overtime calculation.

Section 2:      In the event of a death of an immediate family member that requires travel outside of Florida, the employee shall upon request be entitled to up to five (5) regularly scheduled working days off, of which three (3) shall be paid and up to two (2) unpaid.  In the event of a death which requires the employee to travel outside of the United States, the employee shall upon request be entitled to up to ten (10) regularly scheduled working days off, of which three (3) shall be paid and up to seven (7) unpaid.

## ARTICLE 19- JURY PAY

Any regular employee who is required to serve on a jury of any type on normal work days when scheduled to work shall be paid by the Employer the difference between the jury fee paid said employee for such jury duty and the employee's regular wage per day, for up to a total of seven days that the employee shall serve on such jury.

## ARTICLE 20- MEALS

Employees will be provided with one wholesome meal per shift with proper variation and with sanitary and adequate facilities for eating including table and seats.

## ARTICLE 21– UNIFORMS

Section 1: Whenever the Employer requires employees to wear special uniforms such uniforms shall be supplied and laundered at the expense of the Employer.

Section 2: Where practicable, proper attire and/or all requirement to protect employee's health regarding working conditions under extreme heat or cold shall be provided by the Employer.

## ARTICLE 22- LOCKERS AND SANITATION

Section 1: The Employer shall maintain strict observance of all sanitation and health laws insofar as they affect the working conditions of employees. Sanitary dressing and changing rooms shall be made available to all full-time uniformed employees.

Section 2: The parties recognize that lockers and garment bags supplied by the Hotel are the property of the Hotel and inappropriate materials such as, but not limited to, weapons of any type, alcoholic beverages, unauthorized or illegal drugs, literature which is potentially offensive to certain religions, ethnic, or racial groups and any Hotel items which are not the property of the employees, etc., shall not be permitted in the employee locker or garment bag.

Section 3: Lockers and garment bags may be opened and searched at the Hotel's sole discretion, provided further than any locker or garment bag so opened is done in the presence of security, union steward or union employee, or management.

## ARTICLE 23- UNION PINS

The Hotel acknowledges that under the National Labor Relations Act, as amended, employees have certain rights to wear buttons while at work. Notwithstanding this, in recognition of the Hotel's goal of achieving a luxury recognition status, the parties agree that employees will not wear buttons, but may wear pins as follows: Employees may at all times wear a Union pin of reasonable size provided they do not block or interfere with badges required by the Hotel to be worn by employees and meet the standard below. (Such I.D. badges at the Hotel's discretion may include the name of each employee as well as a designated number). Union pins will be an up-scale, silver tie tack style and approved in advance by the Hotel.

## ARTICLE 24 - BULLETIN BOARD

Bulletin boards shall be provided on which the Union may post official Union notices. One such bulletin board shall be positioned outside the entrance to Cafe 54.

## ARTICLE 25- TRAINING PROGRAMS

Section 1: Mandatory employee training, education programs, and/or departmental meetings are an essential aspect of human resources management - new employees need to learn how to perform their jobs and current employees may need to improve their performance or want to prepare themselves for higher level jobs. Training hours for tipped employees (servers, bartenders, bell staff, doorman, etc.) will be paid at the benefit rate or their regular rate, whichever is greater, per hour for training time. Non-tipped employees will be paid at their regular rate of pay.

21

Ex. A to Local 355 Counter Claim (D.E. #17-1)

Section 2:  All employees attending training on a regular day off shall receive a minimum of four (4) hours pay. Failure to attend mandatory trainings may result in disciplinary action according to the Attendance Policy so long as the training has been scheduled according to Article 14, Section 6. An employee will be granted a leave of absence without pay and benefits for a period of up to one year in order to participate in Union-sponsored training programs. Requests for such leave of absence will not be unreasonably denied. An employee who participates in a Union sponsored training program shall maintain his/her seniority.

Section 3: The Union and the Hotel mutually agree to establish a cross-training program for the purpose of allowing employees to enhance their skills and experience and for the purpose of offering additional opportunities to employees. The parties agree that the cross-training program is not for the purpose of creating a "utility-like" classification. In order to get a cross-training program started, the parties agree to initially cross-train employees in the Banquet Department. Thereafter, by mutual agreement, the Union and the Hotel may extend the cross-training program to additional departments.

The cross-training program will work as follows:

- Market cross-training program and gather a list of employees who are interested in working extra hours for the Banquet Department.
- Once a cross-training list is determined, the department will lead a training program for those interested and qualified employee. Employees participating in such training shall be paid at the "training rate".  Not all employees will qualify; qualifications will be determined by the department providing the cross training/lateral service.
- Employees should have completed at least 3 months in their current position.
- Employees must notify their department managers that they have signed up for cross training/lateral service.
- Employees must complete a position certification held by the department's trainers.
- After successful completion of the position certification program, employees will be placed on a departmental list to be called if extra help is needed. Employees will be called in order of their seniority, provided that employees regularly scheduled for less than 40 hours will have first preference (in order of seniority). Employees may only cross-train outside of their regularly scheduled work week.
- The borrowing department will pay the rate of the borrowing department and any overtime incurred by the employee. The employee's current home department will have priority over scheduling. Therefore, the lateral service department schedule cannot conflict with that of the home department.
- An employee who violates a company standard while working in the lateral service department will be subject to disciplinary action based on their current disciplinary status.

All hours worked as part of the cross-training program will apply to hours required to qualify for benefits.

**ARTICLE 26- GRIEVANCE AND ARBITRATION**

Section 1: Any grievance other than a discharge case shall be processed in the following manner and every effort shall be made by the parties to secure the prompt disposition thereof.

Step 1: Grievances shall be discussed by the affected employee and shop steward or union representative with the affected employee's immediate supervisor provided said grievance is presented within seven (7) calendar days from the date of occurrence giving rise to the grievance.

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Step 2: Should no satisfactory settlement be made of the grievance at Step 1, the union representative may appeal the grievance to the department head or his/her designee within the department. Such appeal must be made in writing on the Union Grievance Form to the extent practicable (but the grievance shall thereafter be reduced to a form within 48 hours) within seven (7) calendar days of the presentation of the grievance to the immediate supervisor.

Step 3: Should no satisfactory settlement be made of the grievance in Step 2, the union representative may appeal the grievance to the Hotel labor relations representative or his/her designee. Such appeal must be in writing on the Union Grievance Form within seven (7) calendar days of the presentation of the grievance to the department head.

Arbitration: Should no satisfactory settlement be made of the grievance at Step 3, the union representative may appeal the grievance to arbitration. Such appeal must be served in writing by certified mail within fourteen (14) calendar days of the presentation of the grievance to the Vice President of Human Resources or his/her designee. Arbitrations must be filed within thirty (30) days of the completion of the grievance procedure.

Section 2: Any grievance over a discharge shall be filed in writing within seven (7) calendar days of the discharge at Step 2, but any meeting on a discharge grievance shall be held in Human Resources with the Division Head present.

Section 3:     Any dispute appealed to Arbitration shall proceed in the following manner:

a.  may be submitted to final and binding arbitration.  A seven-name panel of available arbitrators shall be requested from the Federal Mediation and Conciliation Service;

b.  A representative of the Union and a representative of Management will then agree on a single arbitrator from the FMCS supplied list to hear and determine the matter;

c.  In the event the representatives are unable to agree on the selection of an arbitrator from this list, then the representatives will, by lot, determine who goes first and will proceed in an alternative manner to strike names from the list with the final name remaining to be selected as the arbitrator;

d.  The selected arbitrator will then be engaged.

Section 4: As promptly as possible after the arbitrator has been selected, he/she shall conduct a hearing between the parties and consider the subject matter of the dispute. The arbitrator shall render a decision not later than thirty (30) calendar days from the date of the hearing and such decision will be served on the Employer and the Union in writing and will be final and binding on both parties.

Section 5:  The Employer may introduce into evidence at arbitration copies of written guest complaints (redacted to protect guest identifying information only) that have previously been provided to the Union, if requested.

Section 6: The arbitrator may render an ex parte default award. Both parties agree that a judgment may be entered enforcing any award rendered as above in the courts of the State of Florida or in the United States District Court having jurisdiction over the sites of the principal office of the Employer.

Section 7:  The arbitrator shall have jurisdiction and authority to apply, interpret, and determine compliance with the terms of this Agreement, but may not add to, deviate from, detract from, or alter in

23

any way the provisions of this Agreement.  The decision of the arbitrator shall be confined to the matter submitted to him for arbitration.

Section 8: The expenses and fees of the arbitrator, court, reports, transcripts, and room facilities for the arbitration, if any, shall be shared equally by the parties. Each party shall make arrangements for and pay the witnesses who are called by them.

Section 9: The time limits specified in this Article may be extended by mutual agreement in writing.

Section 10: Notwithstanding the provisions of this Article, the parties are free to mutually agree upon a manner, other than arbitration, in which they dispose of any grievance.

Section 11: The arbitration procedure described herein may be instituted only by either the union or the Employer and by no other person, party, or entity.

Section 12: The arbitration herein described shall proceed to completion upon the merits unless the party objecting hereto obtains a court order stating such arbitration.

## ARTICLE 27- PENSION BENEFIT

Section 1: The Employer shall contribute to the Hotel Industry Pension Fund the following rates:

| June 1, 2018 | June 1, 2019 | June 1, 2020 | June 1, 2021 | June 1, 2022 |
|---|---|---|---|---|
| $71.72 | $74.99 | $78.41 | $81.98 | $85.72 |

The Employer shall pay this contribution as set forth above for each employee covered by this Agreement and transmit this sum each month to said Fund to provide prevailing pension benefits no later than the 10th day of the following month, together with the names, social security numbers, and gross wages earned by the employees for whom payments were made upon forms required by the Fund.

Section 2: The Employer's contributions to the Fund shall be limited as hereinabove specified.

Section 3: The Employer shall, upon request, be furnished with copies of the regular registration and audit reports, and booklets describing the plan of benefits.

Section 4: In the event that any future legislation be enacted, there shall be no duplication or cumulation of coverage, and the parties shall negotiate such changes as may be required by law.

Section 5: The Employer further agrees to make available to the Fund all records of employees hired, classification of employees, names, ages, social security numbers, and wages paid which the said Fund may require for its sound and efficient operation.

Section 6: In the event the Employer shall become in arrears in payment to the Fund, as outline above, for a period of one month (1) or more, the Employer shall then pay to the Fund the sum of 6% interest, per annum, on all arrearages due to the Fund. Furthermore, in the event the Fund must resort to legal action for arrearage collections, then the Employer shall be responsible for all costs including legal fees and 6% interest for the necessary expenditures involved in the collection of said arrearage payments.

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

<u>Section 7:</u> For the limited purpose of this Article the Union may be considered as a contributing Employer and officials and employees of the Union and of the Fund may be considered as employees on behalf of whom contributions may be made to said Fund.

<u>Section 8:</u> The Employer shall make contributions for employees on paid vacation and holidays.

<u>Section 9:</u> Notwithstanding anything contained in the Article to the contrary, the Employer's obligation to make the contributions under this Article ceases if the Fund fails to be qualified under Section 4.01 and 5.01 of the Internal Revenue Code. The Union represents that the Fund currently qualifies under Section 4.01 and 5.01 of the Internal Revenue Code and complies in all material respects with the provisions of ERISA. The Union further represents that there has been timely filing on behalf of the Fund of all appropriate reports and all information material with the IRS, the Department of Labor and the Pension Benefit Guaranty Corporation.

<u>Section 10:</u> In the event that the Fund goes into "critical and declining" status at any time during the term of this Agreement, the parties agree to immediately re-open this contract as to this Article only and the Company may at that time withdraw from the Pension should the parties reach mutual agreement regarding retirement benefits.

<u>Section 11:</u> NATIONAL PLUS PLAN (401K)

The Employer shall become a participating Employer in the National Plus Plan (hereinafter called the "Plan") effective January 1, 2018. The Employer agrees to be bound by the Plan's Agreement and Declaration of Trust as may be amended from time to time.  The Employer further agrees and consents to the Employer-designated Trustees of the said Plan to serve as such in accordance with the aforesaid Agreement and Declaration of Trust.

The Employer agrees to forward to the Plan on behalf of each participating employee covered by the Collective Bargaining Agreement, before the tenth (10th) of each month, for all payroll weeks ending in the prior calendar month, employee contributions made in accordance with the following language.

Each participating employee may contribute to the Plan through payroll deduction and such deductions will be made based on percentage of pay.

All contributions shall be made payable to the National Plus Plan and shall be remitted to the office of the Plan.

The Employer shall submit monthly, a list showing the names and Social Security numbers of all contributing employees, the amount of employee contributions, and the resulting contributions due (the "Contribution Report").

The Trustees may at any time have an audit made of the Employer's payroll and wage records and other relevant financial records of the Employer in connection with the said contributions and/or reports.

In addition to any other remedies to which the Union or the Plan may be entitled, if the Employer (a) is in default in its contributions for one or more months; (b) is delinquent in submitting a Contribution Report to the Plan for one or more months; (c) refuses to permit the Plan to conduct an audit; or (d) is shown by an audit to owe contributions and/or Contribution Reports to the Plan, it shall pay to the Plan any unreported or delinquent contributions plus interest, retroactive to the due date, at a rate fixed by the Trustees. In addition, if the Plan commences an action to enforce its rights

25

to collect contributions, obtain Contribution Reports,  and/or conduct an audit, the Employer shall pay, in addition to the amounts set forth above, the greater of 20% liquidated damages on any unreported or delinquent contributions or double  interest, and all expenses associated with collecting any unreported or delinquent contributions or delinquent Contribution Reports or enforcing the Plan's right to conduct an audit, including, but not limited to costs and legal fees.

The Employer shall provide to the Plan, on a timely basis, information the Plan reasonably requests for the purpose of conducting non-discrimination testing for the Plan.

## ARTICLE 28- HEALTH BENEFITS

Section 1:      The Total Health and Welfare (including Dental and Administration) contributions rate is $645.47 and shall increase to $753.16 as of October 1, 2017.  Contributions shall be increased by 9% on July 1 of each subsequent year of this Agreement.

The Employer shall pay the contribution as set forth above for each eligible employee covered by this Agreement and transmit this sum each month to said Fund no later than the 10th day of the following month, together with the names, social security numbers, and total hours paid for the employees for whom payments were made upon forms required by the Fund.

Should the Fund offer any optional benefits, such optional benefits shall be fully paid by participating employees by means of an authorized payroll deduction form signed by the employee.

Section 2: The Employer's contributions to the Fund shall be limited as hereinabove specified. The requirements of the Fund with respect to when participant contributions begin and end shall not be changed during the term of this Agreement.

Section 3:      The Employer shall, upon request, be furnished with copies of audit reports and booklets describing the plan of the benefits (Summary Plan Descriptions).  The Employer shall further be furnished with monthly reports (via email) from the Fund with the names of newly enrolled employees, employees who have dropped coverage in the prior month, and employees who have signed a form declining enrollment in the Fund.

Section 4: In the event that any future legislation be enacted, there shall be no duplication or cumulation of coverage, and the parties shall negotiate such changes as may be required by law.

Section 5: The Employer further agrees to make available to the Fund all records of employees hired, classification of employees, names, ages, social security numbers, and hours paid which the said Fund may require for its sound and efficient operation.

Section 6: In the event the Employer shall become in arrears in payment to the Fund, as outline above, for a period of one (1) month, or more the Employer shall then pay to the Fund the sum of 6% interest, per annum, on all arrearages due to the Fund. Furthermore, in the event the Fund must resort to legal action for arrearage collections, then the Employer shall be responsible for all costs including legal fees and 6% interest for the necessary expenditures involved in the collection of said arrearage payments.

Section 7: For the limited purpose of this Article, the Union may be considered as a contributing Employer and officials and employees of the Union and of the Fund may be considered as employees on behalf of whom contributions may be made to said Fund.

Section 8: The Employer shall make contributions for employees on paid vacation and holidays.

26

Section 9:  Notwithstanding anything contained in the Article to the contrary, the Employer's obligation to make the contributions under this Article ceases if the Fund fails to be tax exempt under Section 5.01 of the Internal Revenue Code. The Union represents that the Fund is tax exempt under Section 5.01 of the Internal Revenue Code and complies in all material respects with the provisions of ERISA and that there has been timely filing on behalf of the Fund of appropriate reports and all informational material with the IRS and the Department of Labor.

Section 10:  The Employer shall contribute on all Full Time employees following sixty (60) days of continuous employment. The Company will be relieved of making any further payments to the Fund following six (6) months of employment (for which at least four (4) months of contributions have been made), on the first day of the following month, if the employee has not enrolled based on enrollment information provided monthly by the Fund, until such time as the Fund indicates that the employee has signed an enrollment form.  Further, the Employer will be relieved of making any further contributions to the Fund for any employee upon the execution by that employee of a form declining enrollment in the Fund, on the first day of the following month, until such time as the Fund indicates that the employee has signed an enrollment form.

Eligibility for insurance for Full Time employees shall be based on quarterly paid hours. Quarterly eligibility shall be 350 hours except for July, August, and September in which the quarterly eligibility shall be 300 hours.  On-call employees and regular Part-time employees shall not be eligible for coverage, unless they meet the requisite hours set forth above. On-call and part-time employees who meet the requisite hours shall be informed by the Employer that they are eligible to enroll for insurance with the Fund.

An employee who fails to meet the eligibility requirements in a given quarter shall be notified in writing by the Employer and shall be afforded a second opportunity to reach the eligibility requirement in the following quarter.  Should the employee meet the eligibility requirements in the following quarter, the Employer will continue to make monthly contributions for that employee.  In the event that an employee fails to meet the eligibility requirements in two consecutive quarters, the employee shall be notified in writing by the Employer and the Employer shall be relieved from making monthly contributions for that employee until such time that the employee meets the eligibility requirement in a subsequent quarter at which point the employee shall again begin making the specified monthly contributions for that employee.

## ARTICLE 29- SUCCESSOR CLAUSE

Section 1:        The Employer may lease, sublease and/or contract out laundry services to outside operators in which the Employer has no ownership interest.  Current bargaining unit laundry employees shall be offered employment in other bargaining unit positions for which they are qualified.  Any new lease, sublease and/or contract with outside operators for bargaining unit food and beverage work, food and beverage outlets and food and beverage operations beyond that permitted herein shall be subject to renegotiations and mutual agreement with the Union.

Section 2: The parties agree that in the event of a sale, assignment, or lease, the Employer shall be obligated to pay for and/or transfer to the buyer, successor, or assignee, all wages and accrued holiday and vacation benefits due to the employees up to the date of sale, assignment, or lease. If an employee does not become eligible for benefits accrued, the seller shall receive credit for said sums from the buyer.

Section 3: Effective upon ratification, in the event that the Employer sells, transfers, or assigns all or part of its right, title, or interest in the operation covered by this Agreement or substantially all of the

27

Ex. A to Local 355 Counter Claim (D.E. #17-1)

assets used in such operation, or in the event there is a change in the ownership of the Hotel that impacts bargaining unit employees, the Employer shall give the Union reasonable advance notice in writing. The Employer further agrees that as a condition to any such sale, assignment or transfer, it will obtain from any successor a written promise that the successor shall hire a majority of the Hotel's employees represented by the Union (subject to changes in the level of staffing) and will recognize the Union as the collective bargaining representative for the employees in that position represented by the Union, and furnish a copy thereof to the Union, in which event, the Employer shall be relieved of its obligations hereunder to the extent that it has transferred its right, title, or interest. This provision shall expire on the date of the expiration of this Agreement.

## ARTICLE 30- RELIEF APPEALS

Whenever it shall appear to an Arbitrator appointed under this Agreement that the factual situation with respect to the Fontainebleau Miami Beach is such that the wage and hour scales provided in this Agreement will work unusual hardship on such hotel, and affect adversely the interest of the workers therein, such wage and hour scales may be modified, in such hotel, to the extent approved by the Arbitrator.

## ARTICLE 31- PAID SICK LEAVE

All full-time employees that have been employed for the hotel for one (1) year or more shall be eligible to receive three (3) paid sick leave days per year and each calendar year thereafter. This shall be increased to four (4) paid sick leave days as of January 1, 2020.  Tipped employees shall be paid the Benefit Rate or their regular rate of pay, whichever is greater. All others will be paid at the regular hourly rate. New employees shall be eligible for paid sick leave pay after one year of employment, prorated for the remainder of that calendar year. All unused paid sick leave days will be paid in full in the last pay period of the calendar year. Paid sick leave days will not be carried over to the next calendar year. Employee annual sick days paid shall not be counted toward the hotel's Time and Attendance Policy.

## ARTICLE 32- GUEST SERVICE COMMITMENT

Section 1: The Parties to this contract recognize that a renewed guest service commitment is required by managers and employees alike.

Section 2: The Employer recognizes that employees, and their input, into guest service matters are a valuable resource and must be encouraged and facilitated. To this end, the parties will seek ways to implement this facet of the commitment by endeavoring to schedule quarterly meetings on this issue including the use of a Joint Labor Management Committee where the parties deem appropriate.

Section 3: The Employer, Union, employees, and managers of the Hotel will strive to anticipate and meet guest needs and to deliver the highest quality guest service. Thus, employees and managers will be expected to deliver quality guest services and shall work together to address guest service issues and maximize the guest experience, without regard to the usual and customary tasks performed, strict job definitions, and past practices which are, or may be, counter-productive or possibly negatively impact the parties' total commitment to improve quality guest service.

Section 4: Provided that no employee shall be displaced, the Hotel, based upon business considerations designed to provide quality guest services, may, utilize employees among various outlets and/or departments to address non-routine situations.

Ex. A to Local 355 Counter Claim (D.E. #17-1)

Section 5: The Union and the Employer agree that dissatisfied guests simply will not return to the hotel, and therefore it is in the parties' mutual interest to provide premier guest service. Toward this end, the Employer must train bargaining unit employees on how to provide premier guest service and the Employer should not employ or continue to employ bargaining unit employees who are either unable or unwilling to provide, or who do not provide, premier guest services. Therefore:

1) The Employer has the right to establish guest service standards, as well as appropriate grooming and dress standards.

2) The Employer may apply progressive discipline, up to and including discharge, against employees who are the subject of legitimate guest complaints.

3) The Employer may apply progressive discipline, up to and including discharge, against employees who fail to receive a passing score on a service audit regarding the Hotel's required guest service standards at the conclusion of a training session on such standards.

Discipline administered under this Section is subject to the grievance and arbitration provisions of the Agreement.

The Employer shall not be required to compel any guest to testify during the grievance or the arbitration procedure nor to reveal the guest's contact information, including address, e-mail, or telephone number to the Union or the employees. Where the Union wishes to investigate a written guest complaint, the Employer shall cooperate in working with the Union in investigating the matter. It is the intent and meaning of this Agreement that the Union and its members, nor any agents thereof, shall not contact any Hotel guest directly during an investigation or the processing of any grievance. Nothing in this section shall prevent a guest from reaching out to the Union or its members.

Section 6: The Union and the Employer shall share equally in the printing of the Collective Bargaining Agreement to be made available to both management and employees. In order to have an understanding of the CBA among all employees, the CBA shall be printed in English, Spanish, and Haitian Creole.

## ARTICLE 33- DRUG AND ALCOHOL POLICY

Where there is reasonable cause to believe that an employee is under the influence of alcohol or a controlled substance, the employee, after being notified of the contents of this subsection, must consent to an immediate physical examination at an independent medical facility or suffer the penalty of discharge. The Employer shall pay for the cost of the examination, and the employee shall be paid for all the time required for the examination. A blood alcohol level at or in excess of the current level allowed by law provides an absolute presumption that an employee is under the influence of alcohol.

## ARTICLE 34- ORIENTATION

The Union shall be afforded the right to meet with new hires in the orientation process for one-half (1/2) hour. In addition, the Hotel shall provide the Union with the name, classification, and hire date of all new bargaining unit employees at least two (2) days prior to orientation, if practicable. The Employer will not otherwise involve itself in the union orientation process.

## ARTICLE 35- HOUSEKEEPING

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

For the purpose of this Article, Room Attendants will refer to employees in both the Hotel and Condos, unless explicitly stated otherwise.

Section 1: A credit is defined as a room or a portion of a large room such as a large suite. Guest Room Attendants are paid by the hour and will be assigned fourteen (14) credits per workday during their normal shift, provided that any attendant may volunteer to take extra credits over and above the 14 assigned. Room Attendants in the Condos shall be assigned to twelve (12) credits per workday during their normal shift. Throughout the term of this contract, the shift for the Guest Room Attendant and the housekeeping Houseperson will be eight and one-half hours each day with a thirty (30) minute unpaid meal break.

Section 2: In the event a Room Attendant believes s/he will not be able to complete the assigned number of rooms in the time allocated for a legitimate reason, s/he shall advise her/his floor supervisor no later than two (2) hours before his/her shift is scheduled to end, as soon as s/he is aware so that other arrangements can be made and the guest experience will not be jeopardized. The supervisor will assess the situation and will either arrange for help or will reduce the number of rooms assigned on that particular day. In the event that sufficient additional assistance is not available, the employer may authorize the room attendant work beyond the scheduled shift to complete the assigned rooms if the room attendant is able to stay.

If the room attendant in unavailable to stay, extra rooms will be offered to those working that day as described in Section 3 below. Extra credits for rooms cleaned are paid the sum of five dollars ($5.00) if completed during the scheduled shift.

Section 3: Consideration to assigning extra work will be given as follows:

a)  A seniority list of attendants shall be posted daily by the two housekeeping time clocks;
b)  Employees electing extra work shall so indicate on the list by 10:00 a.m. each day. If an insufficient number of attendants volunteer, extra rooms shall be assigned on a first come, first serve basis, or if the number is still insufficient by management based on seniority;
c)  Any attendant who commits to cleaning extra rooms is expected to clean those rooms, barring unexpected compelling circumstances; and
d)  Posting of the sign-up list does not guarantee either overtime or extra rooms.

Section 4: Room Attendants assigned ten (10) or more credits that are checkouts will have their credits reduced by two (2). Room Attendants assigned nine (9) or more credits that are checkouts will have their credits reduced by one (1). Room Attendants regular assignments will not be altered to avoid assignment of checkouts or to obtain checkouts.

Section 5: If a Room Attendant is required to clean on three (3) floors during a shift, her/his credit assignment will be reduced by one (1). If a room attendant is required to clean on four (4) floors during a shift, her/his assignment will be reduced by two (2) credits.

Section 6: To the extent practicable and by seniority, Room Attendants shall be assigned to a regular section. Room Attendants assigned to a regular section may be required to make up rooms in other nearby sections, if there are insufficient rooms in their assigned sections. Sections shall not be altered in order to avoid reductions in room assignments due to assignment reductions described in Sections 4 and 5 above.

Section 7: Any housekeeping gratuity charged to a group or tour shall be distributed in the following manner: 90% to the Room Attendants and 10% to Housepersons who worked while the group

30

was in-house. The gratuity shall be shared among those employees who serviced the rooms occupied by the group.  The Union shall receive upon request, the breakdown of any such gratuity distributed to bargaining unit personnel.

Section 8:        The Union and employer will meet and bargain during the first ninety (90) days of the contract over the assignment of credits and agree to address a small number of equitable credit adjustments.  In the event that the Employer intends to introduce modifications in its rooms, it shall notify the Union of the proposed changes and will give the Union adequate opportunity to discuss prior to implementation.

Section 9: A sum of four dollars ($4.00) shall be paid to the Room Attendant for the make up of a roll-away bed or a crib. This will be increased by $0.20 beginning on January 1, 2018 and by an increase of $0.20 for each year thereafter.

Section 10:  The houseperson workload is defined by the current job description (dated April 23, 2007).  In the event the Employer intends to introduce modifications to the Houseperson workload or job requirements, it shall notify the Union of the proposed changes and will give the Union adequate opportunity to discuss said changes.    The Company and the Union acknowledge that housepersons will not be used in lieu of scheduling a Linen Attendant. Among other duties, Linen Attendants are responsible for adequately stocking linen closets.  Housepersons are issued a Daily Checklist each workday.  In the event a houseperson believes s/he will not be able to complete the daily assignment in the time allocated for a legitimate reason, s/he shall advise her/his floor supervisor (no later than two (2) hours before his/her shift is scheduled to end) as soon as s/he is aware, so that other arrangements can be made and the guest experience will not be jeopardized.  In the event that a scheduled houseperson does not report to work, the Employer shall call in another houseperson.  If after attempts have been made to cover the shift, no employees are able to come in, the manager will prioritize work assignments and make adjustments as needed to cover the open station.

## ARTICLE 36- FAVORED NATIONS

The Parties agree that during the term of this Agreement, should the Union enter into any successor contract with any full service, three star or above hotel in the jurisdiction of Local 355, providing for a combined economic package of wage increases or service charge distribution percentages, paid time off, and health insurance contributions that is more favorable to such hotel than the standards contained in this Agreement, then the Fontainebleau management shall immediately have the benefit of such provisions and they shall automatically become a part of this Agreement.  The parties agree that the terms of this article shall not be applicable to first contracts negotiated by Local 355 with any hotels initially organized between the ratification of this Agreement until June 30, 2022 or to any successor contracts that simply maintain more favorable terms and conditions that are already in the contracts that exist at the time of this contract.

## ARTICLE 37- PARKING

The Employer and the Union agree to form a committee to explore ways to work cooperatively to reduce the cost of parking for bargaining unit employees. This committee shall have its first meeting within 60 days of ratification of this Agreement.

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

## ARTICLE 38 - HEALTH AND SAFETY

Section 1:      The Hotel and the Union agree to establish and maintain a "Joint Health and Safety Committee" of up to five (5) participants per party at each meeting. The Union may, however, designate up to eight (8) employees as members. The Committee will meet at least quarterly and meetings will be initiated by the Hotel.

Section 2:  The Employer shall provide a safe and healthy workplace, as required by law and provide adequate equipment and supplies.  The Employer shall make Safety Data Sheets available, as required by law.

## ARTICLE 39- CIVIL RIGHTS

Section 1:   BACKGROUND CHECKS

a.      The Employer shall not condition the continued employment, transfer or promotion to a position in the bargaining unit of any Employee on a review of the employee's credit history or reports derived from the employee's credit information.

b.      The Employer will not inquire about or require an Employee to disclose or reveal an arrest or a criminal accusation that has been fully and finally resolved without a conviction or judicial admission of guilt.  An internal applicant for promotion or transfer will not be denied an interview solely on the basis of criminal record.

Nothing in this Agreement shall require the Employer to hire any applicant for employment, and an arbitrator shall not have the authority to order the Employer to hire any applicant for employment.

Section 2: INCARCERATION

a.      Incarceration, on its own, does not provide just cause for disciplinary action, provided that the foregoing shall not prohibit the Employer from disciplining an Employee for just cause for any other reason, even if directly or indirectly related to the incarceration (including but not limited to job abandonment, conduct resulting in the incarceration, potential for reputational harm or adverse business consequences to the Employer from continued employment of Employee, criminal conviction, etc.) or from suspending an employee without pay and/or putting the Employee on an unpaid leave of absence pending (i) investigation of charges or accusations related to the incarceration if such charges or accusations constitute or could constitute a felony under state or federal law and/or (ii) resolution of felony criminal proceedings relating to the incarceration.  Nothing in this paragraph shall restrict any other Employer rights related to disciplinary action.

b.      Employees who have been incarcerated retain an obligation to timely notify or have someone timely notify the Employer regarding the Employee's absence from work, provided that the Employer shall excuse a failure to so notify the Employer if circumstances render such notification impracticable, provided that notification is given by or on behalf of the Employee as soon as thereafter practicable.

c.      Subject to the subsection a above, an incarcerated employee who is released to return to work within thirty (30) days of the original absence caused by incarceration and has met the

32

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

requirements of this section, shall be returned to work without loss of seniority or other privileges of employment.

## ARTICLE 40– IMMIGRANTS' RIGHTS

Section 1:        GENERAL PRINCIPLES

The Union and the Employer have a mutual interest in avoiding the termination of trained employees. Accordingly, to the extent not addressed by this Agreement, the Union and the Employer may negotiate over issues related to compliance with the Immigration Reform and Control Act and any other current or future legislation, government rules or policies related to immigrants.

Section 2:        NON-DISCRIMINATION

1. The Employer shall not discipline, discharge, or discriminate against any employee because of national origin or immigration status, or because the employee is subject to immigration or deportation proceedings. An employee subject to immigration or deportation proceedings shall retain employment so long as the employee is authorized to work in the United States.

2. The Employer shall not take any adverse action against an employee due to changes in the employee's name or social security number, provided that the employee is authorized to work in the United States.

3. While English is the language of the workplace, the Employer recognizes the right of employees to use the language of their choice amongst themselves.

4. In meetings involving discipline, except in situations where an employee is being suspended pending investigation, an employee who clearly needs language assistance or who cannot fully understand the issues relevant to his/her discipline and requests language assistance shall be provided by the Employer with an individual capable of assisting in the communication. Any reasonable delay in interviewing or effectuating discipline as a result of the need for such shall not affect the timeliness of any grievance or discipline. In all other matters, the Employer shall make a good faith effort to provide appropriate language assistance when an employee clearly needs such assistance or when the employee cannot fully understand what is being said and requests language assistance.

Section 3:        LEAVES OF ABSENCE

1. Unpaid Leave Upon request, employees shall be released for a total of five (5) unpaid working days per each rolling twelve (12) month period, in order to attend government proceedings and any related matters for the employee only. The employee shall submit proof of such proceedings and attendance by the employee to the Employer.

2. If the Employer terminates an employee who is not authorized to work in the U.S. or because the employee has provided false information about his/her authorization to work in the U.S. or if an employee resigns in lieu of being terminated for one of the foregoing reasons, the Employer shall:

a. immediately reinstate the employee to his/her former position, without loss of prior seniority (but seniority for vacation or other benefits does not continue to accrue during the period of absence) if the employee provides proof of work authorization within 12 months from the date of termination.

33

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

b.  if the employee provides proof of work authorization more than 12 months and less than 24 months after the termination date, rehire the employee into the next available opening in the employee's former classification or another classification for which the employee is qualified, as a hew hire without seniority.

<u>Section 4:</u>        VERIFICATION OF WORK-AUTHORIZATION STATUS

1.  The Employer shall not require or demand proof of citizenship or immigration status, except as required by 8 USC § 1324a(b).  No employee employed continuously since November 6, 1986 or whose circumstances constitute "continuing employment" as defined in 8 CFR § 274a.2(b)(1)(viii) shall be required to provide such proof.

2.  The Employer shall not verify non-probationary employees' identities, immigration status, authorization to work in the United States or social security numbers through E-Verify, the Social Security Administration's Social Security Number Verification Service, or any other method of checking information about employees with any government agency, unless required by law.

3.  If re-verification is required by law when a document used to prove authorization to work expires, the Employer shall provide the Union and the employee at least 120 days advance notice.

<u>Section 5:</u>        NO MATCH LETTERS

The Employer who receives a "No-Match" letter agrees to take any and all reasonable steps necessary to resolve the discrepancy prior to effectuating any adverse employment action in order to be consistent with applicable federal law, regulations, or enforcement guidelines.

<u>Section 6:</u>  <u>Workplace Immigration Enforcement:</u> The Employer shall: Notify a representative of the Union as soon as practical if the Employer receives a no-match letter from the Social Security Administration (SSA), or if it is contacted by the Department of Homeland Security (DHS) or any other government agency related to the immigration status of the Employee covered by this Agreement or if a search, arrest warrant, administrative warrant, subpoena, or other request for documents is presented to the Employer. The Union agrees that it shall keep confidential any information it obtains pursuant to this Section and that it will use any such information solely to represent or assist the affected Employee(s) in regards to the DHS matter. To the extent legally possible, the Employer shall offer a private setting for questioning for Employees by DHS.

<u>Section 7:</u>        MANAGEMENT TRAINING

The Employer shall train all managers on this section within three (3) months of agreement to its terms, and thereafter within six months of hiring any new manager or supervisor.

<u>Section 8:</u>        PAID CITIZENSHIP DAY

On the day that an employee is sworn in as a U.S. citizen, the employee will be excused from work and will be compensated for all lost time at the same rate used for holiday pay.

**ARTICLE 41- Hospitality Employees Advancement and Training (HEAT) Fund**

<u>Section 1:</u> The Employer agrees to contribute $.07 per hour paid per employee to the Hospitality Workers Training Fund.  The Hospitality Workers Training Fund has been established and

34

maintained pursuant to Section 302 of Taft-Hartley Act and the provisions of the Employee Retirement Income Security Act. The Employer agrees to be bound by the Fund's Trust Agreement.

Section 2: The Employer shall pay the contribution as set forth above for each employee covered by this Agreement and transmit this sum each month to said Fund no later than the 10th day of the following month, together with the names, social security numbers, and hours worked by the employees for whom payments were made, upon forms required by the Fund.

Section 3: In the event the Employer shall become in arrears in payment to the Fund, as outlined above, for a period of one (1) month, or more the Employer shall then pay to the Fund the sum of 6% interest, per annum, on all arrearages due to the Fund. Furthermore, in the event the Fund must resort to legal action for arrearage collections, then the Employer shall be responsible for all costs including legal fees and 6% interest for the necessary expenditures involved in the collection of said arrearage payments.

Section 4: Notwithstanding anything contained in the Article to the contrary, the Employer's obligation to make the contributions under this Article ceases if the Fund fails to be tax exempt under Section 5.01 of the Internal Revenue Code. The Union represents that the Fund is tax exempt under Section 5.01 of the Internal Revenue Code and complies in all material respects with the provisions of ERISA and that there has been timely filing on behalf of the Fund of appropriate reports and all informational material with the IRS and the Department of Labor.

Section 5: The Union and the Employer shall engage in a joint process to determine the Hotel's training needs.

Section 6: The Union and the Employer will work together to obtain additional funding for employee training from various sources.

Section 7: If an applicant is certified according to mutually established criteria through Fund's training entity, such certification shall be considered in the application process.

## ARTICLE 42- AGENCY EMPLOYEES IN HOUSEKEEPING

Section 1: The Union and the Hotel desire to establish a process going forward that protects employees and also allows the hotel to operate when employees are unavailable in Housekeeping due to peak operations.  This agreement shall not apply to emergency situations involving extenuating circumstances which require immediate action, e.g., five Room Attendants unexpectedly call in sick in which case the Hotel can use agency workers, if it cannot fill the need with On-Call or other unscheduled Room Attendants. Accordingly, the Union and the Hotel agree as follows:

1) The Employer may hire up to 20 On-Call Room Attendants;
2) When a major event occurs and or the occupancy level at the Hotel is unusually high and the Hotel requires additional employees as all of the regular full-time Room Attendants are working 40 hour schedules, On Call Housekeeping bargaining unit employees will be utilized first;
3) If insufficient On Call Housekeeping employees are available, the regular, full-time Room Attendants will be given the opportunity to work the event on an overtime basis;
4) Employees will be notified of this opportunity through a departmental posting and will be given a deadline of 24 hours from being notified to elect to work the event. Employees shall be provided reasonable notice of the event and the available work. Notice shall be provided

35

via postings by time clocks or such method as is reasonable and mutually agreed upon by the Union and the Employer. Priority shall be given to bargaining unit employees who are scheduled to work less than forty (40) hours during the week.

5) Once an employee commits to working an event, it is considered part of their regular schedules.

6) Bargaining unit members of the Union from nearby hotels and graduates of HEAT training program will be given preference to be On-Call Room Attendants provided they apply for the position and pass the required background checks and On Call Room Attendants shall be paid at the new hire rate and shall have a separate classification seniority list and shall receive the regular wage increases listed in Schedule A in effect at the time the work is performed for all hours actually worked.  If an insufficient number of bargaining unit employees and/or On Call Room Attendants are available then the Hotel may utilize agency workers consistent with this agreement.

7) No displacement of employees in the bargaining unit nor erosion of the bargaining unit shall result from utilization of these On-Call Room Attendants or agency employees.

8) The Union will be notified in all instances where agency workers are utilized and provided with information about the extent of such utilization within seven days of such utilization.

The Hotel agrees that there shall be no use of agency employees to perform housekeeping work, except as specifically provided herein.

## ARTICLE 43- COMPLETE AGREEMENT

This Agreement reached as a result of collective bargaining represents the full and complete agreement between the parties, and supersedes all previous agreements and practices which were made in the term of the prior agreement. This language does not preclude discussion between the parties on the subject matter not contained herein.

## ARTICLE 44– DURATION

This Agreement shall remain in effect from July 1, 2017 through June 30, 2022 inclusive, and thereafter from year to year, unless either party, not less than sixty (60) days prior to the anniversary date, signifies in writing its desire to change or modify this Agreement.

In witness whereof, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of this 24 day of March, 2018.

For the Employer:

Fontainebleau Florida Hotel, LLC
d/b/a Fontainebleau Miami Beach

By: _____

For the Union:

UNITE HERE
Union Local 355
By: _____

36

Schedule A

| | | 2017 | | |
|---|---|---|---|---|
| | | New Hire | 1 Year | 2 Year |
| **Vida** | | | | |
| | Barback | $11.04 | $11.78 | $12.51 |
| | Busser | $11.04 | $11.78 | $12.51 |
| | Host/Hostess | $11.20 | $11.94 | $12.68 |
| | Runner | $10.78 | $11.52 | $12.26 |
| | Server | $5.67 | $6.20 | $6.71 |
| | Service Bartender | $11.74 | $12.25 | $12.76 |
| **Café 54 (EDR)** | | | | |
| | Runner | $11.04 | $11.78 | $12.51 |
| | Server/ Busser | $11.04 | $11.78 | $12.51 |
| **In Room Dining** | | | | |
| | Order Taker/ Cashier | $11.30 | $12.04 | $12.78 |
| | Server | $5.67 | $6.20 | $6.71 |
| | Busser | $11.04 | $11.78 | $12.51 |
| | Service Bartender | $11.74 | $12.25 | $12.76 |
| **Private Bars** | | | | |
| | Private Bar Attendant | $11.55 | $12.29 | $13.02 |
| **Catering Banquets** | | | | |
| | Banquet Bar Back | $10.90 | $11.64 | $12.38 |
| | Banquet Bartender | $10.90 | $11.64 | $12.38 |
| | Banquet Cashier | $11.20 | $11.94 | $12.68 |
| | Banquet Porter | $11.04 | $11.78 | $12.51 |
| | Banquet Coffee Breaker | $5.67 | $5.87 | $6.07 |
| | Banquet Server | $5.67 | $5.87 | $6.07 |
| **Culinary** | | | | |
| | Chef de Partie | $16.35 | $16.85 | $17.35 |
| | Commis 1 | $14.50 | $14.95 | $15.40 |
| | Commis 2 | $13.90 | $14.32 | $14.75 |
| **Stewarding** | | | | |
| | Kitchen Worker 1 | $11.65 | $12.39 | $13.12 |
| | Kitchen Worker 2 | $11.04 | $11.78 | $12.51 |
| **Warehouse and Receiving** | | | | |
| | Storeroom Clerk | $11.39 | $12.13 | $12.87 |
| **Purchasing** | | | | |
| | Mail Clerk | $11.39 | $12.13 | $12.87 |
| **Communications** | | | | |
| | Telephone Operator | $11.71 | $12.45 | $13.18 |
| **Front Service** | | | | |
| | Baggage Handler | $11.39 | $12.13 | $12.87 |
| | Bell Captain | $11.60 | $12.34 | $13.07 |
| | Bell Dispatcher | $11.39 | $12.13 | $12.87 |
| | Bellperson | $5.74 | $6.49 | $7.24 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

|  |  | 2017 | | |
|---|---|---|---|---|
|  |  | New Hire | 1 Year | 2 Year |
|  | Doorperson | $6.80 | $7.05 | $7.55 |
| **Housekeeping** |  |  |  |  |
|  | Balcony Cleaner | $11.39 | $12.13 | $12.87 |
|  | Drapery Attendant | $14.40 | $15.13 | $15.86 |
|  | Houseperson | $11.39 | $12.13 | $12.87 |
|  | Turndown Attendant | $11.70 | $12.44 | $13.17 |
|  | Room Attendant | $11.45 | $12.18 | $12.92 |
|  | Room Attendant (Condo) | $11.70 | $12.44 | $13.17 |
|  | Utility Porter | $11.90 | $12.64 | $13.38 |
|  | Guest Service Response Atten | $11.39 | $12.13 | $12.87 |
|  | Wardrobe Attendant | $11.45 | $12.18 | $12.92 |
|  | Seamstress | $11.90 | $12.64 | $13.38 |
| **Laundry/Linen** |  |  |  |  |
|  | Laundry Attendant | $11.90 | $12.64 | $13.38 |
|  | Linen Attendant | $11.39 | $12.13 | $12.87 |
| **Internal Maintenance** |  |  |  |  |
|  | Night Cleaner | $11.39 | $12.13 | $12.87 |
|  | Public Area Attendant | $11.39 | $12.13 | $12.87 |
|  | Utility Porter | $11.90 | $12.64 | $13.38 |
| **Engineering** |  |  |  |  |
|  | Aquatic Engineer | $12.75 | $13.75 | $14.75 |
|  | Carpenter 1 | $16.75 | $18.75 | $19.30 |
|  | Electrician 1 | $19.75 | $21.75 | $22.30 |
|  | Electrician 2 | $14.75 | $15.75 | $16.75 |
|  | General Maintenance | $12.75 | $13.75 | $14.75 |
|  | Kitchen Mechanic 1 | $17.75 | $19.75 | $20.30 |
|  | Kitchen Mechanic 2 | $13.75 | $14.75 | $15.15 |
|  | Laborer | $11.39 | $12.13 | $12.87 |
|  | Mechanic 2 | $13.75 | $14.75 | $16.00 |
|  | Mechanic 1 | $17.75 | $19.75 | $20.30 |
|  | Painter 2 | $13.95 | $14.75 | $15.15 |
|  | Painter 1 | $16.75 | $17.75 | $18.25 |
|  | Plumber 2 | $13.95 | $14.75 | $15.15 |
|  | Plumber 1 | $16.75 | $17.75 | $18.25 |
|  | Refrigeration/ AC 1 | $17.75 | $19.75 | $20.30 |
|  | Refrigeration/ AC 2 | $13.75 | $14.75 | $15.15 |
|  | Stationary Engineer 1 | $16.75 | $17.75 | $18.25 |
|  | Stationary Engineer 2 | $14.75 | $15.75 | $16.20 |
|  | Storeroom Attendant | $11.39 | $12.13 | $13.75 |
|  | Yardmen | $11.04 | $11.95 | $13.75 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Schedule A

| | | July 1, 2018 | | |
|---|---|---|---|---|
| | | New Hire | 1 Year | 2 Year |
| **Vida** | | | | |
| | Barback | $11.49 | $12.23 | $12.96 |
| | Busser | $11.49 | $12.23 | $12.96 |
| | Host/Hostess | $11.65 | $12.39 | $13.13 |
| | Runner | $11.23 | $11.97 | $12.71 |
| | Server | $5.87 | $6.40 | $6.91 |
| | Service Bartender | $12.19 | $12.70 | $13.21 |
| **Café 54 (EDR)** | | | | |
| | Runner | $11.49 | $12.23 | $12.96 |
| | Server/ Busser | $11.49 | $12.23 | $12.96 |
| **In Room Dining** | | | | |
| | Order Taker/ Cashier | $11.75 | $12.49 | $13.23 |
| | Server | $5.87 | $6.40 | $6.91 |
| | Busser | $11.49 | $12.23 | $12.96 |
| | Service Bartender | $12.19 | $12.70 | $13.21 |
| **Private Bars** | | | | |
| | Private Bar Attendant | $12.00 | $12.74 | $13.47 |
| **Catering Banquets** | | | | |
| | Banquet Bar Back | $11.35 | $12.09 | $12.83 |
| | Banquet Bartender | $11.35 | $12.09 | $12.83 |
| | Banquet Cashier | $11.65 | $12.39 | $13.13 |
| | Banquet Porter | $11.49 | $12.23 | $12.96 |
| | Banquet Coffee Breaker | $5.77 | $5.97 | $6.17 |
| | Banquet Server | $5.77 | $5.97 | $6.17 |
| **Culinary** | | | | |
| | Chef de Partie | $16.80 | $17.30 | $17.80 |
| | Commis 1 | $14.95 | $15.40 | $15.85 |
| | Commis 2 | $14.35 | $14.77 | $15.20 |
| **Stewarding** | | | | |
| | Kitchen Worker 1 | $12.10 | $12.84 | $13.57 |
| | Kitchen Worker 2 | $11.49 | $12.23 | $12.96 |
| **Warehouse and Receiving** | | | | |
| | Storeroom Clerk | $11.84 | $12.58 | $13.32 |
| **Purchasing** | | | | |
| | Mail Clerk | $11.84 | $12.58 | $13.32 |
| **Communications** | | | | |
| | Telephone Operator | $12.16 | $12.90 | $13.63 |
| **Front Service** | | | | |
| | Baggage Handler | $11.84 | $12.58 | $13.32 |
| | Bell Captain | $12.05 | $12.79 | $13.52 |
| | Bell Dispatcher | $11.84 | $12.58 | $13.32 |
| | Bellperson | $5.94 | $6.69 | $7.44 |

July 1, 2018

|  | | New Hire | 1 Year | 2 Year |
|---|---|---|---|---|
|  | Doorperson | $7.25 | $7.50 | $8.00 |
| **Housekeeping** | | | | |
|  | Balcony Cleaner | $11.84 | $12.58 | $13.32 |
|  | Drapery Attendant | $14.85 | $15.58 | $16.31 |
|  | Houseperson | $11.84 | $12.58 | $13.32 |
|  | Turndown Attendant | $12.15 | $12.89 | $13.62 |
|  | Room Attendant | $11.90 | $12.63 | $13.37 |
|  | Room Attendant (Condo) | $12.15 | $12.89 | $13.62 |
|  | Utility Porter | $12.35 | $13.09 | $13.83 |
|  | Guest Service Response Atten | $11.84 | $12.58 | $13.32 |
|  | Wardrobe Attendant | $11.90 | $12.63 | $13.37 |
|  | Seamstress | $12.35 | $13.09 | $13.83 |
| **Laundry/Linen** | | | | |
|  | Laundry Attendant | $12.35 | $13.09 | $13.83 |
|  | Linen Attendant | $11.84 | $12.58 | $13.32 |
| **Internal Maintenance** | | | | |
|  | Night Cleaner | $11.84 | $12.58 | $13.32 |
|  | Public Area Attendant | $11.84 | $12.58 | $13.32 |
|  | Utility Porter | $12.35 | $13.09 | $13.83 |
| **Engineering** | | | | |
|  | Aquatic Engineer | $13.20 | $14.20 | $15.20 |
|  | Carpenter 1 | $17.20 | $19.20 | $19.75 |
|  | Electrician 1 | $20.20 | $22.20 | $22.75 |
|  | Electrician 2 | $15.20 | $16.20 | $17.20 |
|  | General Maintenance | $13.20 | $14.20 | $15.20 |
|  | Kitchen Mechanic 1 | $18.20 | $20.20 | $20.75 |
|  | Kitchen Mechanic 2 | $14.20 | $15.20 | $15.60 |
|  | Laborer | $11.84 | $12.58 | $13.32 |
|  | Mechanic 2 | $14.20 | $15.20 | $16.45 |
|  | Mechanic 1 | $18.20 | $20.20 | $20.75 |
|  | Painter 2 | $14.40 | $15.20 | $15.60 |
|  | Painter 1 | $17.20 | $18.20 | $18.70 |
|  | Plumber 2 | $14.40 | $15.20 | $15.60 |
|  | Plumber 1 | $17.20 | $18.20 | $18.70 |
|  | Refrigeration/ AC 1 | $18.20 | $20.20 | $20.75 |
|  | Refrigeration/ AC 2 | $14.20 | $15.20 | $15.60 |
|  | Stationary Engineer 1 | $17.20 | $18.20 | $18.70 |
|  | Stationary Engineer 2 | $15.20 | $16.20 | $16.65 |
|  | Storeroom Attendant | $11.84 | $12.58 | $14.20 |
|  | Yardmen | $11.49 | $12.40 | $14.20 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Schedule A

| | | New Hire | 1 Year | 2 Year |
|---|---|---|---|---|
| **Vida** | | July 1, 2019 | | |
| | Barback | $11.99 | $12.73 | $13.46 |
| | Busser | $11.99 | $12.73 | $13.46 |
| | Host/Hostess | $12.15 | $12.89 | $13.63 |
| | Runner | $11.73 | $12.47 | $13.21 |
| | Server | $6.07 | $6.60 | $7.11 |
| | Service Bartender | $12.69 | $13.20 | $13.71 |
| **Café 54 (EDR)** | | | | |
| | Runner | $11.99 | $12.73 | $13.46 |
| | Server/ Busser | $11.99 | $12.73 | $13.46 |
| **In Room Dining** | | | | |
| | Order Taker/ Cashier | $12.25 | $12.99 | $13.73 |
| | Server | $6.07 | $6.60 | $7.11 |
| | Busser | $11.99 | $12.73 | $13.46 |
| | Service Bartender | $12.69 | $13.20 | $13.71 |
| **Private Bars** | | | | |
| | Private Bar Attendant | $12.50 | $13.24 | $13.97 |
| **Catering Banquets** | | | | |
| | Banquet Bar Back | $11.85 | $12.59 | $13.33 |
| | Banquet Bartender | $11.85 | $12.59 | $13.33 |
| | Banquet Cashier | $12.15 | $12.89 | $13.63 |
| | Banquet Porter | $11.99 | $12.73 | $13.46 |
| | Banquet Coffee Breaker | $5.87 | $6.07 | $6.27 |
| | Banquet Server | $5.87 | $6.07 | $6.27 |
| **Culinary** | | | | |
| | Chef de Partie | $17.30 | $17.80 | $18.30 |
| | Commis 1 | $15.45 | $15.90 | $16.35 |
| | Commis 2 | $14.85 | $15.27 | $15.70 |
| **Stewarding** | | | | |
| | Kitchen Worker 1 | $12.60 | $13.34 | $14.07 |
| | Kitchen Worker 2 | $11.99 | $12.73 | $13.46 |
| **Warehouse and Receiving** | | | | |
| | Storeroom Clerk | $12.34 | $13.08 | $13.82 |
| **Purchasing** | | | | |
| | Mail Clerk | $12.34 | $13.08 | $13.82 |
| **Communications** | | | | |
| | Telephone Operator | $12.66 | $13.40 | $14.13 |
| **Front Service** | | | | |
| | Baggage Handler | $12.34 | $13.08 | $13.82 |
| | Bell Captain | $12.55 | $13.29 | $14.02 |
| | Bell Dispatcher | $12.34 | $13.08 | $13.82 |
| | Bellperson | $6.14 | $6.89 | $7.64 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

|  |  | July 1, 2019 | | |
|---|---|---|---|---|
|  |  | New Hire | 1 Year | 2 Year |
|  | Doorperson | $7.75 | $8.00 | $8.50 |
| **Housekeeping** |  |  |  |  |
|  | Balcony Cleaner | $12.34 | $13.08 | $13.82 |
|  | Drapery Attendant | $15.35 | $16.08 | $16.81 |
|  | Houseperson | $12.34 | $13.08 | $13.82 |
|  | Turndown Attendant | $12.65 | $13.39 | $14.12 |
|  | Room Attendant | $12.40 | $13.13 | $13.87 |
|  | Room Attendant (Condo) | $12.65 | $13.39 | $14.12 |
|  | Utility Porter | $12.85 | $13.59 | $14.33 |
|  | Guest Service Response Atten | $12.34 | $13.08 | $13.82 |
|  | Wardrobe Attendant | $12.40 | $13.13 | $13.87 |
|  | Seamstress | $12.85 | $13.59 | $14.33 |
| **Laundry/Linen** |  |  |  |  |
|  | Laundry Attendant | $12.85 | $13.59 | $14.33 |
|  | Linen Attendant | $12.34 | $13.08 | $13.82 |
| **Internal Maintenance** |  |  |  |  |
|  | Night Cleaner | $12.34 | $13.08 | $13.82 |
|  | Public Area Attendant | $12.34 | $13.08 | $13.82 |
|  | Utility Porter | $12.85 | $13.59 | $14.33 |
| **Engineering** |  |  |  |  |
|  | Aquatic Engineer | $13.70 | $14.70 | $15.70 |
|  | Carpenter 1 | $17.70 | $19.70 | $20.25 |
|  | Electrician 1 | $20.70 | $22.70 | $23.25 |
|  | Electrician 2 | $15.70 | $16.70 | $17.70 |
|  | General Maintenance | $13.70 | $14.70 | $15.70 |
|  | Kitchen Mechanic 1 | $18.70 | $20.70 | $21.25 |
|  | Kitchen Mechanic 2 | $14.70 | $15.70 | $16.10 |
|  | Laborer | $12.34 | $13.08 | $13.82 |
|  | Mechanic 2 | $14.70 | $15.70 | $16.95 |
|  | Mechanic 1 | $18.70 | $20.70 | $21.25 |
|  | Painter 2 | $14.90 | $15.70 | $16.10 |
|  | Painter 1 | $17.70 | $18.70 | $19.20 |
|  | Plumber 2 | $14.90 | $15.70 | $16.10 |
|  | Plumber 1 | $17.70 | $18.70 | $19.20 |
|  | Refrigeration/ AC 1 | $18.70 | $20.70 | $21.25 |
|  | Refrigeration/ AC 2 | $14.70 | $15.70 | $16.10 |
|  | Stationary Engineer 1 | $17.70 | $18.70 | $19.20 |
|  | Stationary Engineer 2 | $15.70 | $16.70 | $17.15 |
|  | Storeroom Attendant | $12.34 | $13.08 | $14.70 |
|  | Yardmen | $11.99 | $12.90 | $14.70 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

schedule A

|  | | July 1, 2020 | | |
|---|---|---|---|---|
|  | | New Hire | 1 Year | 2 Year |
| **Vida** | | | | |
| | Barback | $12.49 | $13.23 | $13.96 |
| | Busser | $12.49 | $13.23 | $13.96 |
| | Host/Hostess | $12.65 | $13.39 | $14.13 |
| | Runner | $12.23 | $12.97 | $13.71 |
| | Server | $6.27 | $6.80 | $7.31 |
| | Service Bartender | $13.19 | $13.70 | $14.21 |
| **Café 54 (EDR)** | | | | |
| | Runner | $12.49 | $13.23 | $13.96 |
| | Server/ Busser | $12.49 | $13.23 | $13.96 |
| **In Room Dining** | | | | |
| | Order Taker/ Cashier | $12.75 | $13.49 | $14.23 |
| | Server | $6.27 | $6.80 | $7.31 |
| | Busser | $12.49 | $13.23 | $13.96 |
| | Service Bartender | $13.19 | $13.70 | $14.21 |
| **Private Bars** | | | | |
| | Private Bar Attendant | $13.00 | $13.74 | $14.47 |
| **Catering Banquets** | | | | |
| | Banquet Bar Back | $12.35 | $13.09 | $13.83 |
| | Banquet Bartender | $12.35 | $13.09 | $13.83 |
| | Banquet Cashier | $12.65 | $13.39 | $14.13 |
| | Banquet Porter | $12.49 | $13.23 | $13.96 |
| | Banquet Coffee Breaker | $5.97 | $6.17 | $6.37 |
| | Banquet Server | $5.97 | $6.17 | $6.37 |
| **Culinary** | | | | |
| | Chef de Partie | $17.80 | $18.30 | $18.80 |
| | Commis 1 | $15.95 | $16.40 | $16.85 |
| | Commis 2 | $15.35 | $15.77 | $16.20 |
| **Stewarding** | | | | |
| | Kitchen Worker 1 | $13.10 | $13.84 | $14.57 |
| | Kitchen Worker 2 | $12.49 | $13.23 | $13.96 |
| **Warehouse and Receiving** | | | | |
| | Storeroom Clerk | $12.84 | $13.58 | $14.32 |
| **Purchasing** | | | | |
| | Mail Clerk | $12.84 | $13.58 | $14.32 |
| **Communications** | | | | |
| | Telephone Operator | $13.16 | $13.90 | $14.63 |
| **Front Service** | | | | |
| | Baggage Handler | $12.84 | $13.58 | $14.32 |
| | Bell Captain | $13.05 | $13.79 | $14.52 |
| | Bell Dispatcher | $12.84 | $13.58 | $14.32 |
| | Bellperson | $6.34 | $7.09 | $7.84 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

|  |  | July 1, 2020 | | |
|  |  | New Hire | 1 Year | 2 Year |
|---|---|---|---|---|
|  | Doorperson | $8.25 | $8.50 | $9.00 |
| **Housekeeping** |  |  |  |  |
|  | Balcony Cleaner | $12.84 | $13.58 | $14.32 |
|  | Drapery Attendant | $15.85 | $16.58 | $17.31 |
|  | Houseperson | $12.84 | $13.58 | $14.32 |
|  | Turndown Attendant | $13.15 | $13.89 | $14.62 |
|  | Room Attendant | $12.90 | $13.63 | $14.37 |
|  | Room Attendant (Condo) | $13.15 | $13.89 | $14.62 |
|  | Utility Porter | $13.35 | $14.09 | $14.83 |
|  | Guest Service Response Atten | $12.84 | $13.58 | $14.32 |
|  | Wardrobe Attendant | $12.90 | $13.63 | $14.37 |
|  | Seamstress | $13.35 | $14.09 | $14.83 |
| **Laundry/Linen** |  |  |  |  |
|  | Laundry Attendant | $13.35 | $14.09 | $14.83 |
|  | Linen Attendant | $12.84 | $13.58 | $14.32 |
| **Internal Maintenance** |  |  |  |  |
|  | Night Cleaner | $12.84 | $13.58 | $14.32 |
|  | Public Area Attendant | $12.84 | $13.58 | $14.32 |
|  | Utility Porter | $13.35 | $14.09 | $14.83 |
| **Engineering** |  |  |  |  |
|  | Aquatic Engineer | $14.20 | $15.20 | $16.20 |
|  | Carpenter 1 | $18.20 | $20.20 | $20.75 |
|  | Electrician 1 | $21.20 | $23.20 | $23.75 |
|  | Electrician 2 | $16.20 | $17.20 | $18.20 |
|  | General Maintenance | $14.20 | $15.20 | $16.20 |
|  | Kitchen Mechanic 1 | $19.20 | $21.20 | $21.75 |
|  | Kitchen Mechanic 2 | $15.20 | $16.20 | $16.60 |
|  | Laborer | $12.84 | $13.58 | $14.32 |
|  | Mechanic 2 | $15.20 | $16.20 | $17.45 |
|  | Mechanic 1 | $19.20 | $21.20 | $21.75 |
|  | Painter 2 | $15.40 | $16.20 | $16.60 |
|  | Painter 1 | $18.20 | $19.20 | $19.70 |
|  | Plumber 2 | $15.40 | $16.20 | $16.60 |
|  | Plumber 1 | $18.20 | $19.20 | $19.70 |
|  | Refrigeration/ AC 1 | $19.20 | $21.20 | $21.75 |
|  | Refrigeration/ AC 2 | $15.20 | $16.20 | $16.60 |
|  | Stationary Engineer 1 | $18.20 | $19.20 | $19.70 |
|  | Stationary Engineer 2 | $16.20 | $17.20 | $17.65 |
|  | Storeroom Attendant | $12.84 | $13.58 | $15.20 |
|  | Yardmen | $12.49 | $13.40 | $15.20 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Schedule A

| | | July 1, 2021 | | |
|---|---|---|---|---|
| | | New Hire | 1 Year | 2 Year |
| **Vida** | | | | |
| | Barback | $12.99 | $13.73 | $14.46 |
| | Busser | $12.99 | $13.73 | $14.46 |
| | Host/Hostess | $13.15 | $13.89 | $14.63 |
| | Runner | $12.73 | $13.47 | $14.21 |
| | Server | $6.47 | $7.00 | $7.51 |
| | Service Bartender | $13.69 | $14.20 | $14.71 |
| **Café 54 (EDR)** | | | | |
| | Runner | $12.99 | $13.73 | $14.46 |
| | Server/ Busser | $12.99 | $13.73 | $14.46 |
| **In Room Dining** | | | | |
| | Order Taker/ Cashier | $13.25 | $13.99 | $14.73 |
| | Server | $6.47 | $7.00 | $7.51 |
| | Busser | $12.99 | $13.73 | $14.46 |
| | Service Bartender | $13.69 | $14.20 | $14.71 |
| **Private Bars** | | | | |
| | Private Bar Attendant | $13.50 | $14.24 | $14.97 |
| **Catering Banquets** | | | | |
| | Banquet Bar Back | $12.85 | $13.59 | $14.33 |
| | Banquet Bartender | $12.85 | $13.59 | $14.33 |
| | Banquet Cashier | $13.15 | $13.89 | $14.63 |
| | Banquet Porter | $12.99 | $13.73 | $14.46 |
| | Banquet Coffee Breaker | $6.07 | $6.27 | $6.47 |
| | Banquet Server | $6.07 | $6.27 | $6.47 |
| **Culinary** | | | | |
| | Chef de Partie | $18.30 | $18.80 | $19.30 |
| | Commis 1 | $16.45 | $16.90 | $17.35 |
| | Commis 2 | $15.85 | $16.27 | $16.70 |
| **Stewarding** | | | | |
| | Kitchen Worker 1 | $13.60 | $14.34 | $15.07 |
| | Kitchen Worker 2 | $12.99 | $13.73 | $14.46 |
| **Warehouse and Receiving** | | | | |
| | Storeroom Clerk | $13.34 | $14.08 | $14.82 |
| **Purchasing** | | | | |
| | Mail Clerk | $13.34 | $14.08 | $14.82 |
| **Communications** | | | | |
| | Telephone Operator | $13.66 | $14.40 | $15.13 |
| **Front Service** | | | | |
| | Baggage Handler | $13.34 | $14.08 | $14.82 |
| | Bell Captain | $13.55 | $14.29 | $15.02 |
| | Bell Dispatcher | $13.34 | $14.08 | $14.82 |
| | Bellperson | $6.54 | $7.29 | $8.04 |

**Ex. A to Local 355 Counter Claim (D.E. #17-1)**

Schedule A

| | | July 1, 2021 | | |
|---|---|---|---|---|
| | | New Hire | 1 Year | 2 Year |
| | Doorperson | $8.75 | $9.00 | $9.50 |
| **Housekeeping** | | | | |
| | Balcony Cleaner | $13.34 | $14.08 | $14.82 |
| | Drapery Attendant | $16.35 | $17.08 | $17.81 |
| | Houseperson | $13.34 | $14.08 | $14.82 |
| | Turndown Attendant | $13.65 | $14.39 | $15.12 |
| | Room Attendant | $13.40 | $14.13 | $14.87 |
| | Room Attendant (Condo) | $13.65 | $14.39 | $15.12 |
| | Utility Porter | $13.85 | $14.59 | $15.33 |
| | Guest Service Response Atten | $13.34 | $14.08 | $14.82 |
| | Wardrobe Attendant | $13.40 | $14.13 | $14.87 |
| | Seamstress | $13.85 | $14.59 | $15.33 |
| **Laundry/Linen** | | | | |
| | Laundry Attendant | $13.85 | $14.59 | $15.33 |
| | Linen Attendant | $13.34 | $14.08 | $14.82 |
| **Internal Maintenance** | | | | |
| | Night Cleaner | | $14.08 | $14.82 |
| | Public Area Attendant | $13.34 | $14.08 | $14.82 |
| | Utility Porter | $13.85 | $14.59 | $15.33 |
| **Engineering** | | | | |
| | Aquatic Engineer | $14.70 | $15.70 | $16.70 |
| | Carpenter 1 | $18.70 | $20.70 | $21.25 |
| | Electrician 1 | $21.70 | $23.70 | $24.25 |
| | Electrician 2 | $16.70 | $17.70 | $18.70 |
| | General Maintenance | $14.70 | $15.70 | $16.70 |
| | Kitchen Mechanic 1 | $19.70 | $21.70 | $22.25 |
| | Kitchen Mechanic 2 | $15.70 | $16.70 | $17.10 |
| | Laborer | $13.34 | $14.08 | $14.82 |
| | Mechanic 2 | $15.70 | $16.70 | $17.95 |
| | Mechanic 1 | $19.70 | $21.70 | $22.25 |
| | Painter 2 | $15.90 | $16.70 | $17.10 |
| | Painter 1 | $18.70 | $19.70 | $20.20 |
| | Plumber 2 | $15.90 | $16.70 | $17.10 |
| | Plumber 1 | $18.70 | $19.70 | $20.20 |
| | Refrigeration/ AC 1 | $19.70 | $21.70 | $22.25 |
| | Refrigeration/ AC 2 | $15.70 | $16.70 | $17.10 |
| | Stationary Engineer 1 | $18.70 | $19.70 | $20.20 |
| | Stationary Engineer 2 | $16.70 | $17.70 | $18.15 |
| | Storeroom Attendant | $13.34 | $14.08 | $15.70 |
| | Yardmen | $12.99 | $13.90 | $15.70 |