United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Fontainebleau Florida Hotel, LLC, Plaintiff, | ) | |
| v. | ) | Civil Action No. 20-22667-Civ-Scola |
| The South Florida Hotel and Culinary Employees Welfare Fund and Unite Here, Local 355, Defendants. | ) | |

**Order on Motions to Dismiss**

This matter is before the Court upon United Here Local 355 ("Local 335") and The South Florida Hotel and Culinary Employees Welfare Fund's (the "Welfare Fund") respective motions to dismiss (**ECF Nos. 38, 39**.) Having considered the parties' motions and the relevant legal authorities, the Court **grants** Local 355's motion (**ECF No. 38**) and **grants** the Welfare Fund's motion (**ECF No. 39**).

**1) Background**

In this declaratory judgment action, the Plaintiff, Fontainebleau Florida Hotel, LLC ("Fontainebleau") asks the Court to declare that certain employees who were laid-off as a result of the COVID-19 pandemic are not eligible employees under Fontainebleau and Local 355's collective bargaining agreement (the "CBA") such that Fontainebleau has no obligation to make health care contributions to the Welfare Fund on behalf of the laid-off employees. (ECF No. 35, at 10.) Alternatively, Fontainebleau asks the Court to declare that any obligation Fontainebleau had to make healthcare contributions on behalf of its laid-off employees is forgiven as the COVID-19 caused closure constituted force majeure, making Fontainebleau's performance under the CBA impossible. (ECF No. 35, at 10-11.)

The backdrop of this dispute is as follows. On March 24, 2020, Fontainebleau was forced to close its operations pursuant to an order from the City of Miami Beach in order to minimize the spread of COVID-19. (ECF No. 35, at ¶ 1.) As a result of shutdown, Fontainebleau's occupancy dropped from about 80% to zero and all restaurants, bars and other businesses affiliated with Fontainebleau closed. (ECF No. 35, at ¶ 1.) On March 30, 2020, Fontainebleau laid-off 2,083 of its roughly 2,151-person workforce, including 1,077 employees represented by Local 355. (ECF No. 35, at ¶ 1.)

Fontainebleau and Local 355 are parties to a CBA[1] with effective dates from July 1, 2017 through June 30, 2022. The CBA requires Fontainebleau to make health benefits contributions to the Welfare Fund for eligible employees. (ECF No. 38-1, at 32; ECF No. 39, at 3.) After Fontainebleau laid-off Local 355's members, Local 355 and the Welfare Fund demanded that Fontainebleau continue to make health benefits contributions, consistent with the terms of the CBA, on behalf of the eligible laid-off employees. (ECF No. 35, at ¶ 1.) Fontainebleau did not make such payments. The Welfare Fund sent Fontainebleau notices of delinquency but has not made efforts to collect on the funds it claims it is owed from Fontainebleau. (ECF No. 35-2; ECF No. 47, at 2.) On June 8, 2020, Local 355 filed a grievance relating to Fontainebleau's alleged obligation to continue to make contributions to the Welfare Fund on behalf of the laid-off employees. (ECF No. 35, at ¶33.) That grievance was submitted to arbitration, but before the parties could select an arbitrator pursuant to the terms of the CBA, Fontainebleau filed its complaint against the Defendants. (ECF No. 38, at 3.) Fontainebleau estimates approximately $5,000,000.00 in health care benefits contributions are at issue under the CBA. (ECF No. 47, at 2.)

## 2) Legal Standard

### A. Federal Rule 12(b)(1)

Attacks on subject matter jurisdiction under Federal Rule 12(b)(1) come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Thus, the court will "look at the face of the complaint and determine whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction." *Scelta v. Delicatessen Support Servs., Inc.*, No. 98-2578-Civ, 1999 WL 1053121, at *4 (M.D. Fla. Oct. 7, 1999) (citations omitted). Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the

---

[1] The CBA was attached to Fontainebleau's first amended complaint (ECF No. 35) and Local 355's motion to dismiss (ECF No. 38.) While district courts ordinarily should not look outside the complaint when considering a motion to dismiss, the Court may consider "relationship-forming contracts [that] are central to a plaintiff's claim." *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 866 (11th Cir. 2011) (internal quotations omitted). The CBA is at the very core of the dispute between the parties and neither party contests the CBA's accuracy or contents. (ECF No. 38, at 3 n. 1.) Accordingly, the Court will consider the CBA as necessary in adjudicating Local 355 and the Welfare Fund's motions to dismiss.

pleadings," and the court will consider "matters outside the pleadings, such as testimony and affidavits." *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)

**B. Federal Rule 12(b)(6)**

When considering a motion to dismiss under Federal Rule 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted).

**3) Legal Analysis**

In its motion to dismiss, Local 355 asks the Court to dismiss Fontainebleau's amended complaint on two grounds: 1) Local 355 argues that the Court lacks subject matter jurisdiction to issue a declaratory judgment under the Declaratory Judgment Act because the dispute between

Fontainebleau and Local 355 arises under the CBA and not the Employee Retirement Income Security Act ("ERISA") or Section 301 of the Labor Management Relations Act ("LMRA"); and 2) Fontainebleau has failed to exhaust arbitral remedies under the CBA. If the Court disagrees with these arguments, Local 355 asks the Court to exercise its discretion and decline to hear Fontainebleau's claim under the Declaratory Judgment Act, or alternatively, asks the Court to sever Local 355 as a party to Fontainebleau's declaratory relief claim. (ECF No. 38, at 1-2.)

The Welfare Fund advances similar arguments in its own motion to dismiss. First, the Welfare Fund argues that this Court does not have subject matter jurisdiction because Fontainebleau is not authorized to sue under ERISA. (ECF No. 39, at 5-7.) Second, the Welfare Fund argues that Fontainebleau is not entitled to declaratory relief because the Declaratory Judgment Act is not an independent source of federal jurisdiction. If the Court finds that Fontainebleau's claims are proper, similar to Local 355, the Welfare Fund asks the Court to exercise its discretion and decline to hear Fontainebleau's claims for declaratory judgment, or in the alternative, asks the Court to sever the claims related to arbitration and drop the Welfare Fund as a party.

**A. The Court's Subject Matter Jurisdiction**

The Court turns first to the threshold issue of its subject matter jurisdiction. The Declaratory Judgment Act is an "all-purpose remedy, designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful purpose." *AquaDry Plus Corp. v. Rockhill Ins. Co.*, No. 19-62331-Civ, 2020 WL 927440 (S.D. Fla. Feb. 26, 2020) (Scola, J.). The Act gives federal courts "competence to make a declaration of rights" but "did not impose a duty to do so." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

In its amended complaint, Fontainebleau asserts the Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Fontainebleau's substantive causes of action arise under Section 4301(a)(1) and § 515 of ERISA. Fontainebleau also alleges this Court also has subject matter jurisdiction pursuant to Section 301 of the LMRA, 29 U.S.C. § 185, as Local 355 and the Welfare Fund's "actions are in violation of the CBA." (ECF No. 35, at 4.)

***(1) Section 4301 of ERISA***

Section 4301(a)(1) of ERISA, 29 U.S.C. 1451(a)(1), was enacted as part of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") and deals exclusively with retirement benefit plans. *See DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509-10 (6th Cir. 2014) ("A brief review of the statutory scheme governing multiemployer *pension* plans provides context. . . . ERISA . . . created the Pension Benefit Guaranty Corporation ('PBGC') to administer a newly-formed pension plan termination program. . . . Based upon the PBGC's recommendations, Congress enacted the [MPPAA] codified at 29 U.S.C. §§ 1381-1461") (emphasis added); *see also Connors v. Ryan's Coal Co., Inc.*, 923 F.2d 1461, 1462-63 (11th Cir. 1991) ("The MPPAA was enacted in 1980 . . . to regulate employee benefit plans. Under ERISA, the PBGC, a government corporation, protects covered employees by insuring their benefits against fund insolvency or premature termination. . . . The MPPAA sought to discourage voluntary withdrawals from multiemployer plans by imposing a mandatory liability on all withdrawing employers."). Section 4301(a)(1) provides "a plan . . . employer . . . who is adversely affected by the act or omission of any part *under this subtitle*" with the ability to "bring an action for appropriate legal or equitable relief, or both." 29 U.S.C. § 1451(a)(1) (emphasis added); *Carl Colteryahn Dairy, Inc. v. W. Pa. Teamsters and Emps. Pension Fund*, 847 F.2d 113, 120 (3d Cir. 1988) (noting "this subtitle" for purposes of Section 4301 refers to Subtitle E of ERISA). Accordingly, the question is whether the instant dispute relating to health care benefits payments under the CBA arises under Subtitle E of ERISA.

The Court agrees with the Defendants that Section 4301 does not govern health benefits plans and does not address an employer's obligation to contribute to a health benefit plan under the terms of collective bargaining agreements. (ECF No. 38, at 8; ECF No. 39, at 9-10.) Accordingly, the Court fails to see how Section 4301 gives the Court subject matter jurisdiction over the instant dispute which does not arise under Subtitle E of ERISA. The Court finds it does not have subject matter jurisdiction over this dispute pursuant to Section 4301 of ERISA.

Separately, the Court notes that, in apparent recognition of the shortcomings of its arguments with respect to Section 4301, Fontainebleau failed to respond to the arguments raised by Local 355 and the Welfare Fund on this topic in their respective motions to dismiss. Therefore, it appears Fontainebleau has abandoned its Section 4301 arguments. *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2020) (when a party fails to

respond "to any portion or claim in a motion" it is appropriate for the Court to find "such argument or claim [has been] abandoned").

For these reasons, the Court finds it lacks subject matter jurisdiction over the instant dispute pursuant to Section 4301(a)(1) of ERISA.

***(2) Section 515 and Section 502(a)(3) of ERISA***

Section 4301 notwithstanding, Fontainebleau argues the Court also has subject matter jurisdiction sufficient to issue a declaratory judgment under the Declaratory Judgment Act pursuant to Section 515 of ERISA, 29 U.S.C. § 1145. Local 355 and the Welfare Fund advance similar arguments with respect to this claim. They argue that Section 515 of ERISA does not create a cause of action and instead only creates an "obligation on employers" to make contributions to health benefits plans. (ECF No. 38, at 6-7; ECF No. 39, at 8-9.) A review of the statute reveals that Section 515 simply provides "every employer who is obligated to make contributions . . . shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Indeed, it does not appear Section 515, from its plain language, empowers an employer to bring suit. Rather, Section 502(a)(3), 29 U.S.C. § 1132, provides the enforcement mechanism for Section 515. Section 502(a)(3) empowers "a participant, beneficiary, or fiduciary" to bring civil actions to "redress . . . violations" or "enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. 1132(a)(3).

In *Gulf Life Ins. Co. v. Arnold*, the Eleventh Circuit held that Section 502 "is essentially a standing provision: it sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue." 809 F.2d 1520, 1524 (11th Cir. 1987); *see also Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 21 (1983) ("The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties as to whom Congress presumably determined that a right to enter federal court was necessary to further the statutes' purposes.") . Section 502's standing provisions "must be construed narrowly; civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated." *Id.*

While Fontainebleau seems to tacitly acknowledge that it ordinarily could not bring a civil suit under Section 515 or Section 502(a)(3) of ERISA, Fontainebleau nonetheless argues it has properly brought suit against the Defendants under the coercive action doctrine. The coercive action doctrine is longstanding and confers federal courts with "original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily

present a federal question." *Source Capital Fund II, LP v. Iron Workers Local No. 25 Pension Fund*, No. 16-CV-4007, 2017 WL 11529668, at *4 (N.D. Ga. Dec. 18, 2017).

In *Source Capital*, the court confronted a similar question as the one posed here, albeit in the context of Section 4301, which is whether the coercive action doctrine can be used to expand ERISA's standing restrictions. *Id.* at *3-4. In applying the coercive action doctrine (and considering several of the cases Fontainebleau cites from other Circuits) the *Source Capital* court noted that the plaintiffs did not cite, nor did the Court find "any Eleventh Circuit cases that apply the coercive action doctrine" to expand standing provisions under ERISA. *Id.* at *6. The Court sees no reason to disagree with the court's decision in *Source Capital* which effectuates the Eleventh Circuit's mandate that district courts construe ERISA standing provisions narrowly. Courts have been clear that ERISA is a "comprehensive and reticulated statute" such that courts should be "reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002). The Court sees no reason to relax Sections 515 and 502(a)(3)'s standing requirements as requested by Fontainebleau. In order to bring suit under these provisions, a plaintiff such as Fontainebleau must allege it is one of the entities as set forth in Section 502(a)(3). Fontainebleau has not asserted, nor can it, that it is a participant, beneficiary, or fiduciary and therefore Fontainebleau does not have standing pursuant to Section 515 or Section 502(a)(3) under the coercive action doctrine. As such, these subsections of ERISA do not confer subject matter jurisdiction on the Court.

***(3) Section 301 of LMRA***

Finally, Fontainebleau asserts this Court has subject matter jurisdiction pursuant to Section 301 of LMRA. A party may sue under Section 301 "for violation of contracts" such as the CBA "between an employer and a labor organization." 29 U.S.C. § 185(a). A suit under Section 301 is "not one filed with a view to a future contract violation (much less to facilitate action that otherwise would be a contract violation). It is one filed *because a contract has been violated*." *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace and Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998) (internal quotations omitted) (emphasis in original). Indeed, Section 301 was enacted to empower federal courts to enforce collective bargaining agreements. *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470 (1960).

Fontainebleau argues that the Court has subject matter jurisdiction over its complaint because "the Union's and Fund's actions are in violation of the

CBA between the Union and Fontainebleau" (ECF No. 1, at ¶7) and "it is for this Court, not an arbitrator, to determine the novel, federal common law issue raised here regarding the continuing impact of the COVID-19 pandemic on the obligations of the parties under the CBA." (ECF No. 45, at 10.) As support for its allegations that Local 355 and the Welfare Fund violated the CBA, Fontainebleau states it only has an obligation to make contributions for covered employees, the Welfare Fund issued letters demanding contributions for Fontainebleau's employees who were laid-off, and Local 355 initiated an arbitration notwithstanding Fontainebleau's position that the CBA contemplated disputes over arrearages would be resolved by legal action, not arbitration under the CBA. (ECF No. 45, at 11.)

The Court is not convinced that Fontainebleau has adequately alleged that a contract, here the CBA between Fontainebleau and Local 355, has been violated. While Fontainebleau argues the CBA required Local 355 and the Welfare Fund to settle arrearages through "legal action" and Local 355 violated that provision by initiating arbitration, the language of the CBA does not appear to support Fontainebleau's reading. Article 28, Section 6 of the CBA provides "*in the event* the Fund must resort to legal action for arrearage collections, then the Employer shall be responsible for all costs including legal fees . . . ." (ECF No. 38-1, at 32) (emphasis added). Far from mandatory language, this provision seems to suggest that legal action is one avenue, among others, for the Welfare Fund to collect delinquent healthcare benefits payments. Moreover, the Welfare Fund is not a party to the CBA, so it is difficult to discern how Fontainebleau can argue the Welfare Fund violated a contract to which it is not a party. Rather than restricting Local 355's ability to initiate arbitration, it appears that Article 28, Section 6 merely provides the Welfare Fund with recourse if it incurs legal fees when collecting delinquent health benefits payments.

The Court disagrees with Fontainebleau that Local 355 and the Welfare Fund violated the CBA by initiating an arbitration (noting again that the Welfare Fund is not a party to the CBA). Article 26, Section 1 of the CBA covers *"[a]ny grievance"* between Fontainebleau and Local 355. (ECF No. 38-1, at 28) (emphasis added). While Fontainebleau asserts the health care benefits payments are not covered by Article 26, Fontainebleau does not provide this Court with authority indicating why the parties' broad arbitration provision would not cover the instant dispute. Where a collective bargaining agreement contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Bhd. of*

*Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2015). Any doubts "should be resolved in favor of arbitration" particularly where the provision is, as here, "broadly worded." *Id.* Fontainebleau has not provided sufficient argument to the Court indicating how the Welfare Fund's ability to recover legal fees under Article 28, Section 6 somehow restricts Local 355's ability to initiate an arbitration to resolve a grievance under Article 26 of the CBA.

With the above in mind, it appears that Fontainebleau's allegation that the instant dispute is "NOT arbitrable under the CBA" (ECF No. 35, at ¶33) (emphasis in original) is unsupported. Even if Fontainebleau's allegation was better supported, it is entitled to no deference at the motion to dismiss stage. The interpretation of contracts is a question of law for the Court, *Reesey v. Fed. Emergency Mgmt. Agency*, No. 13-60488-Civ, 2013 WL 12086662, at *2 (S.D. Fla. July 9, 2013) (Scola, J.), and a court "need not accept legal conclusions as true", only well-pleaded factual allegations. *Perez v. Muab, Inc.*, No. 10-62441-Civ, 2011 WL 845818, at *1 (S.D. Fla. March 7, 2011) (Cohn, J.). Given the arbitration provision interpretation principles set forth above and the broad nature of Article 26, the Court finds that Fontainebleau has failed to adequately allege that the parties' arbitration provision fails to cover the instant dispute. As, Fontainebleau has failed to advance an "affirmative claim . . . of a violation of the contact", the court "does not have jurisdiction under Section 301(a). *Nu Image, Inc. v. Int'l Alliance of Theatrical Stage Emps.,* 893 F.3d 636, 641 (9th Cir. 2018); *see also Textron*, 528 U.S. at 657-58.

The Court notes that Fontainebleau also asked the Court to declare its requirement to pay health benefits under the CBA invalid. (ECF No. 45, at 12.) However, Fontainebleau's request ignores the Supreme Court's *Textron* precedent, which notes, "the federal court's power to adjudicate [a] contract's *validity* is *ancillary* to, and not independent of, its power to adjudicate suits for violation of contract." *Textron*, 528 U.S. at 658. This restriction "does not mean a federal court can never adjudicate the validity of a contract under § 301(a)", rather, the provision "simply erects a gateway through which parties may pass into federal court." *Id.* at 657-58. For instance, "a declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid" but such a case requires the Plaintiff to first adequately allege a contract violation. *Id.* at 658. Fontainebleau has failed to pass through the proverbial gateway that would allow the Court to traverse the legal landscape to adjudicate the validity of the CBA. The Court therefore lacks the ability to declare invalid Fontainebleau's requirement to make healthcare benefits payments.

**4) Conclusion**

In sum, the Court finds it lacks subject matter jurisdiction over Fontainebleau's declaratory judgment action. The Court **grants** Local 355 and the Welfare Fund's respective motions to dismiss Fontainebleau's amended complaint for declaratory relief. (**ECF Nos. 38, 39**.) This case shall remain open as Local 355 and the Welfare Fund's counterclaims against Fontainebleau remain before the Court.

**Done and ordered** at Miami, Florida, on December 16, 2020.

Robert N. Scola, Jr.
United States District Judge